**UNION TRUST COMPANY, Appellant,**

v.

**The WILLIAMSON COUNTY BOARD OF ZONING APPEALS, Appellee.**

Supreme Court of Tennessee.

Oct. 1, 1973.

Richard D. Speight, Goodpasture, Carpenter, Woods & Sasser, Nashville, for appellant.

Henry Denmark Bell, Franklin, for appellee.

Fyke Farmer, Nashville, for intervenors.

## OPINION

FONES, Justice.

For convenience, the parties will be referred to as in the trial court; that is, the appellant, as complainant, and the appellee, as defendant.

This cause was heard in the Williamson County Chancery Court upon complainant's petition for certiorari, wherein complainant sought reversal of a decision of the defendant Williamson County Board of Zoning Appeals, and issuance of a permit to build a residence upon certain land owned by complainant. The Chancellor dismissed the petition and complainant appealed to this Court, contending, inter alia, that the trial court in the present litigation should be bound through the principle of *stare decisis* to follow the decision in a prior case heard in the same court, involving the same piece of land.

The location of the land in question, known as Lot 37A of Grassland Estates subdivision in the Seventh Civil District of Williamson County, Tennessee, is illustrated in a copy of the subdivision plat, agreed to by the parties as accurate, which we attach as Appendix "A" to this opinion.

The parties further agree that the following allegations in defendant's answer of November 1, 1971, setting out the basic history of the Grassland subdivision and the zoning applicable thereto, may be taken as true:

"In 1956, E. C. Vinson, as owner, obtained approval of a subdivision known as Grasslands Subdivision and had the plat recorded in Plat Book 2, page 15 ROWC. On this plat lot No. 37, situated at the corner of Manley Road and Manley Court, is shown as a lot containing approximately one and one-half acres. At the time of the recording of the E. C. Vinson plat the subdivision was in an Agricultural zoning classification which provided for minimum lot size of one-half acre and a minimum setback of 40 feet. Subsequently, in March 1961, Union Trust Company purchased from E. C. Vinson the lots in Grasslands Subdivision which Mr. Vinson still owned, including lot 37. On June 28, 1961, a plat designated as Revised Subdivision of Grasslands Estates was recorded in Plat Book 2, page 59. On this revised plat lot 37 has been divided into three lots, one of which is lot 37A fronting on both Manley Road (called Harpeth Drive on Revised Plat) and on Manley

Court. Lot 37A contains an area substantially less than one-half acre. Thereafter, on April 13, 1964, the zoning classification applicable to Grasslands Subdivision was changed to Agricultural-B by an amendment to the zoning law adopted by the Williamson County Quarterly Court in Minute Book 6, page 477, pertaining to the Seventh Civil District. The Agricultural-B zoning classification provides for minimum area of 40,000 square feet with a minimum setback of 100 feet and minimum width at the building line of 150 feet."

On December 17, 1964, a lawsuit bearing Rule No. 11602 was filed in the Williamson County Chancery Court, against Union Trust Company and Connell E. Horn, et ux., by James G. Petway, et ux. and H. D. McInturff, et ux. In the instant case the parties stipulate that the record in Petway, et al. v. Union Trust Company, et al., was proffered to the trial court. A copy of the record is authenticated and attached as an exhibit to the Narrative Bill of Exceptions.

For this Court to reach a proper determination in the matter before us, it is necessary to examine in some detail the contents of said record, which we now do.

In their bill for injunction, filed December 17, 1964, the Petways and McInturffs averred that prior to 1960 they acquired by deed from E. C. Vinson, Lot 47 and Lot 22, respectively, in an area known as Grasslands subdivision. The bill then made reference to the subsequent acquisition of lots in the subdivision by Union Trust Company and the recording of a plat designated "Revised Plan of a Portion of Grassland Estates."

The bill further alleges:

"V.

There is and has been, at all times herein mentioned, in full force and effect in Williamson County a zoning ordinance duly enacted by resolution of the county court of said county pursuant to the provisions of T.C.A. 13–401 et. seq. a true copy of said zoning ordinance, including all amendments pertinent to the facts of this case, is attached hereto and identified as Exhibit #1 to this bill but need not be copied. All of the land herein mentioned is situated east of the new Hillsboro Road and lies in an 'agricultural' zone as shown on the zone map on the last page of the Exhibit #1.

VI.

Said Zoning law provides that residential lots in Agricultural Zones shall have a minimum width of 125 feet at the building line. Other minimum requirements of residential lots in Agricultural Zones are as follows:

| | |
|---|---|
| Front yard | – 40 feet |
| Side yard | – 25 feet |
| Rear yard | – 40 feet |
| Area | – One-half acre" |

The foregoing allegations of the bill were admitted as true by the answer filed December 30, 1964, on behalf of Union Trust Company, et al.

The language of the bill continues, as follows:

"VII.

Defendant Union Trust Company is the present owner of record of the following unimproved lots as shown on said 'Revised Plan of a Portion of Grassland Estates', all of which are less than 125 feet in width at any point:

Lot No. 17B
Lot No. 25C
Lot No. 55A
Lot No. 55B
Lot No. 36B
Lot No. 38B
Lot No. 45A

Defendant Union Trust Company is also the owner of record of Lot No. 37A on said plan. Said Lot No. 37A has an area of less than one-half acre, and its dimensions are such that a residence could not be constructed thereon which would comply with the aforesaid mini-

mum requirements as to front, side and rear yards and width at building line.

Complainants therefore allege that none of the aforesaid lots meet the applicable minimum requirements of the Zoning law of Williamson County.

.    .    .    .    .    .

### XII.

.    .    . that the defendant Union Trust Company has heretofore knowingly and willfully violated said Zoning Law and will, unless restrained by injunction of this court, continue to construct dwelling houses on said lots and to sell, transfer and convey the above mentioned lots as residential construction sites in violation of said Zoning law to the injury of the purchasers thereof and to the injury of complainants as neighboring property owners.

.    .    .    .    .    .

Premises considered, Complainants pray:

.    .    .    .    .    .

3. That the defendant Union Trust Company be enjoined from selling, transferring or conveying for residential use the following lots shown on the Revised Plan of a Portion of Grassland Estates as of record in Plat Book 2, page 59, Register's Office for Williamson County, Tennessee; Lots No. 17B, 25C, 55A, 55B, 36B, 38B, 45A, 37A."

In the *Petway* suit, Union Trust Company's answer responds to the foregoing averments, as follows:

### "IV.

Answering Part VII of said bill, defendants admit that Union Trust Company is the owner of the lots therein described. Defendants deny that none of the aforesaid lots meets the requirements of said zoning ordinance. Defendants aver that said lots exceed the minimum requirements of said zoning ordinance in many respects, and substantially comply therewith in all respects.

.    .    .    .    .    .

### IX.

Answering Part XII of said bill, defendants deny that they or either of them have violated or intend to violate said zoning ordinance, but admit that they propose to continue to construct dwelling houses on said lots and to sell the same as residential construction sites. They deny that complainants or neighboring property owners have been, or are, or will be injured thereby.

.    .    .    .    .    .

### XIX.

Defendants aver that each of the lots complained of in Part VII of said bill complied substantially with said zoning ordinance.

.    .    .    .    .    .

Lot 37A has a frontage 20 feet in excess of the minimum requirement of said zoning ordinance and is so situated that a dwelling could be constructed thereon in full compliance with the setback lines and front, side and rear yard distances."

Union Trust Company's answer in the *Petway* case makes further allegations to the effect that the revised plan of Grassland Estates subdivision was approved by the Williamson County Planning Commission and by defendant.

On January 11, 1965, there was entered a decree in Petway, et al. v. Union Trust Company, et al., from which we quote, as follows:

"This cause came on to be heard on December 30, 1964, upon the original bill for injunction, sworn answer of the defendants, the record at large and argument of counsel, from all of which it appears to the Court that the allegations of said bill are fully met and overcome by the answer; that defendant Union Trust Company in its resubdivision of Grassland Estates complied substantially with the Subdivision Regulations and Zoning Ordinance enacted by the County Court of Williamson County, Tennessee; that

said resubdivision was approved by the Williamson County Planning Commission and the Williamson County Board of Zoning Appeals, which bodies are comprised of the same persons and, acting in their dual capacity, empowered to grant variances from said Regulations and Ordinances; . . . that complainants have failed to exhaust their administrative remedies by recourse to either of said administrative bodies as provided in said ordinance."

The Chancellor thereupon dismissed the bill for injunction and granted an appeal to this Court. (There is no indication in the record that the *Petway* case was appealed).

The history of this controversy, subsequent to the *Petway* decision, is summarized in complainant's petition for certiorari, of July 1, 1971, and admitted as true by defendant's answer. The admitted portion of the petition states, as follows:

"During the month of February, 1971, one David Coleman, acting with the permission of, and on behalf of, the complainant Union Trust Company, appeared before one Joe Bowman, whom complainant avers to be the person responsible for issuing building permits in Williamson County, Tennessee, and the said David Coleman did apply for a building permit to construct a residence on the above described lot 37–A in Grassland Estates Section '1' . . .

Acting pursuant to the provisions of Tennessee Code Annotated Section 13–408, which is also shown on Exhibit No. '1' to this Original Bill, David Coleman then appealed to the defendant Williamson County Board of Zoning Appeals, and appeared before that Board on or about February 1st, 1971. The Williamson County Board of Zoning Appeals on that occasion referred the matter to the regular Zoning Board of Williamson County, which Board subsequently refused to direct Joe Bowman to issue the building permit. An appeal was again taken to the Williamson County Board of Zoning Appeals, and David Coleman again appeared before that Board on or about April 5th, 1971, at which time the defendant Board of Zoning Appeals refused to grant a variance with regard to Lot 37–A.

Representatives of your complainant Union Trust Company requested and were granted permission to appear again before the Williamson County Board of Zoning Appeals on May 3rd, 1971, to present additional arguments in favor of the granting of a variance for lot 37–A. This permission was granted, and the matter was docketed for hearing again on May 3rd, 1971, at which time your complainant through its representatives presented such arguments as were pertinent to the issues, and your complainant was subsequently informed and advised that on or about May 3rd, 1971, the Williamson County Board of Zoning Appeals again refused to grant a variance with regard to Lot 37–A."

At this point we refer to the stipulation of the parties:

"7. The petitioner Union Trust Company admitted in open court that Lot 37–A did not conform to the existing zoning regulations for the area, and that in order for a house to be built on lot 37–A, a variance would have to be granted not only as to the area requirement of the lot, but also as to either the setback requirement or the width-at-building line requirement, depending on which street the house faced. The petitioner admitted, therefore, that the Williamson County Board of Zoning Appeals was technically correct in making a determination that the lot did not conform to existing zoning regulations, and had the technical authority to make the ruling that it made. Petitioner, therefore, abandoned its claim that the Williamson County Board of Zoning Appeals had no right, as a technical matter, to refuse to grant the variance requested."

On October 9, 1971, complainant was allowed to amend its petition to allege that defendant, by its actions on February 1, 1971, April 5, 1971, and May 3, 1971, as above described, acted arbitrarily and thereby improperly exercised its jurisdiction.

Complainant's prayer requested the Chancellor to authorize and decree a variance from strict application of the zoning regulations on the ground that such application would, in this case, result in peculiar and exceptional difficulties or exceptional and undue hardship upon complainant. Complainant further asked the trial court to decree that the *Petway* case decided the issues material to the instant action and to decree that the trial court had thereby previously authorized the granting of a variance from strict application of the zoning regulations with regard to Lot 37A. Finally, complainant prayed that the May 3, 1971 action of defendant be reversed and issuance of a building permit for construction of a residence on Lot 37A be allowed and directed.

On June 8, 1972, an order was entered granting leave for certain persons, alleging to be property owners in the vicinity of Lot 37A, to intervene in this cause and file an answer to complainant's petition. Intervenors' answer seeks to uphold defendant's action.

On July 31, 1972, a decree was entered in the instant case, the material portion of which we quote, as follows:

"During argument of counsel and in brief, it was conceded that the single issue to be determined is whether or not a previous suit filed in this Court against the complainant in this suit, Petway v. Union Trust Company, Rule No. 11602, rendered the Williamson County Planning Commission and the Williamson County Board of Zoning Appeals without authority to consider the question of whether or not a building permit should be granted for the construction of a building on the lot in question predicated upon the theory of *stare-decisis*. The Court, after considering the matters recited above, particularly the record in Petway v. Union Trust Company, Rule No. 11602, is of the opinion the doctrine of *stare-decisis* is not applicable because the proceeding in that case was dismissed upon a bill and answer hearing, and for this reason the only issue was that of determining the sufficiency of the answer to meet the allegations of the bill of complaint for the issuance of an injunction. The contents of the answer were admitted to be true only for that purpose. Even though the answer was sworn to, the oath was waived in the complaint; so the answer was no more than a pleading which did not constitute evidence (Gibson's Suits in Chancery, Section 367); Section 21–110, Tennessee Code Annotated), and the decree of the Court was not intended to have any greater effect than to declare that the answer if true was sufficient to meet the allegations in the complaint."

The Chancellor thereupon dismissed the petition for certiorari and subsequently complainant's petition to rehear was denied.

From the Chancellor's dismissal of the cause, complainant has appealed to this Court, and assigned errors.

Complainant's first two assignments are related and will be considered together. They are, as follows:

"I.

The Chancery Court erred in refusing to hold that it was bound by the doctrine of *stare decisis* to follow its own holding in Petway v. Union Trust Company, Rule No. 11602, and thus that it was bound to find for the complainant.

II.

The Chancery Court erred in refusing to hold that its decision in Petway v. Union

Trust Company created a 'rule of property' which was binding, and which required a decision in favor of the complainant."

In support of its position that the outcome of the present case is controlled by the *Petway* decision through the principle of *stare decisis,* complainant relies on the cases of City of Memphis v. Overton, 216 Tenn. 293, 392 S.W.2d 98 (1965), and State ex rel. v. Baseball Club, 127 Tenn. 292, 154 S.W. 1151 (1912).

Complainant particularly calls our attention to the following rule stated in the *Baseball Club* case, 127 Tenn., at p. 307, 154 S.W. at p. 1155 and in the *City of Memphis* case, 216 Tenn., at p. 298, 392 S.W.2d at p. 101:

"It is a familiar principle that *stare decisis* only applies with reference to decisions directly upon the point in controversy."

It is complainant's position that the principle of *stare decisis* applies to the present case, because the points in controversy in the *Petway* litigation and the case sub judice are the same; that is, in 1965, property owners were asking that complainant be enjoined from constructing a house on Lot 37A and others, while in this action complainant asks to be permitted to construct a house on Lot 37A. Complainant asserts that the *Petway* case forever settled the "buildability" of Lot 37A.

The record in the *Petway* suit indicates that case was heard on the basis of zoning regulations involving a one-half acre minimum lot restriction, a 125 foot minimum width-at-building-line restriction, and a front yard requirement of 40 feet. It was in this context that the Chancery Court found as a fact that certain lots, including 37A, substantially complied with these restrictions.

In contrast, there was in effect at the time the present case was heard, zoning regulations including a 40,000 square foot (43,560 square feet being a full acre) mini-

mum lot size, a 100 foot setback restriction, and a 150 foot width-at-building-line requirement. As seen from the parties' stipulation, complainant does not contend that Lot 37A conforms with these restrictions; on the contrary, complainant admits that the lot does not comply.

As we understand *stare decisis,* as reflected by the *City of Memphis* and *Baseball Club* cases, supra, for that doctrine to apply it is necessary that the issues or points in controversy be identical. Or, stated differently, the question is,

"were the issues presented in the former suit, the situation of the subject-matter and of the parties and the terms of the decree such as to be determinative of those now before us?"

Southwestern Presbyterian Univ. v. Clarksville, 149 Tenn. 256, 259 S.W. 550 (1923).

It is clear that the issues or points in judgment in the instant case and in the *Petway* suit were decided upon entirely different zoning regulations. This difference no doubt had its effect on the outcome of each case and is certainly a major distinguishing feature. Accordingly, we do not feel the issues are identical for purposes of applying the doctrine of *stare decisis.*

At this point we note that in the early stages of this suit, an order was entered, on October 9, 1971, which reads, in part:

"Upon application of defendants and without objection, defendants are hereby permitted to withdraw their Motion to Dismiss heretofore filed, it appearing that the parties have reached an understanding through counsel that Petitioner does not seek in this cause a declaration that the decree of this court in the case of Petway v. Union Trust Company is res adjudicata."

The record reflects that from the time of this order until the decree of July 31, 1972, the whole thrust of complainant's

case revolved around the doctrine of *stare decisis,* not *res judicata.*

In 21 C.J.S. Courts § 188, p. 305, the following comment is made on the distinction between *stare decisis* and *res judicata*:

"Res judicata relates to the conclusiveness of prior judicial findings or adjudications, whereas stare decisis relates to the binding effect of the legal principles involved; and res judicata binds parties and privies, whereas stare decisis governs the decision of the same question in the same way in an action between strangers to the record."

In 15 C.J., Courts, § 305, p. 919, n. 99, it is also said that:

"The doctrine of stare decisis relates to legal principles, not to facts. At common law the only thing in a decision binding as authority under the rule of stare decisis is the right principle upon which the case was decided—ratio decidendi—and not the application of such principle."

In the trial court, intervenors relied on the case of Wyatt v. Pennsylvania R.R., 158 F.Supp. 502, (D.Del.1958), from which we quote as follows:

"The theory of stare decisis cannot govern here. That rule relates to pure principles of law by which the conduct of men is governed under all circumstances, not to a decision based upon a mixed question of law and fact involving some purely local matter."

The following is stated in complainant's brief:

"Complainant is also not prepared to concede that the holdings of the Chancery Court in 11602 quoted above, are strictly findings of fact. While there is no authority to support same (or to deny it) there is some logic to the proposition that a finding that Union Trust Company substantially complied with the zoning regulations is a mixed finding of fact and law.

The matter of whether a particular piece of property substantially complies with zoning regulations appears to the complainant to be a legal decision which must be made with reference to a set of facts, consisting of the nature of the property itself, and the nature of the applicable regulations."

As complainant's own description of the ruling on substantial compliance points out, the matter can be understood only in reference to the nature of the property and the zoning regulations. This does not involve an application of a legal principle as contemplated by the doctrine of *stare decisis.* Moreover, it is immaterial whether we are dealing with either findings of fact or mixed findings of law and fact, since the doctrine of *stare decisis* applies to legal principles only.

■ Upon the basis of the foregoing, we are of the opinion that *stare decisis* is inapplicable to the instant case.

As pointed out heretofore, complainant further contends that the *Petway* decision constitutes a rule of property, which the trial court was bound to follow.

■ In *City of Memphis,* supra, there is found the following statement of the law in this jurisdiction on Rule of Property:

"(3) The doctrine of Rule of Property is but a subdivision of that of *stare decisis.* See Sherfy v. Argenbright, 48 Tenn. 128 (1870). Both are more concerned with judicial stability and predictability than with technically correct adjudications. Whereas, *stare decisis* generally embraces all areas of the law, a rule of property connotes a narrower feature, defined by one lexicographer as:

A settled rule or principle, resting usually on precedents or a course of decisions, regulating the ownership or devolution of property. Black, Law Dictionary (4th Ed. 1951).

(4) Thus, a rule of property exists only when the points in judgment arising in a

prior decision are the same as those in subsequent adjudications. Hence, dictum alone will not support a rule of property. Such a rule is, of course, invoked most frequently when commercial or property rights have been acquired or adjusted pursuant to a judgment of a court of competent jurisdiction."

Also, in regard to Rule of Property, we note that doctrine was defined in the case of State v. Caldwell, 181 Tenn. 74, 178 S. W.2d 624 (1944), quoting from 54 C.J., p. 1110, in the following language:

"A settled legal principle governing the ownership and devolution of property; the decisions of the highest court of a state when they relate to and settle some principle of local law directly applicable to title. In the plural, those rules governing the descent, transfer, or sale of property, and the rules which affect the title and possession thereto."

■ There was no issue in *Petway* involving the ownership or devolution of complainant's lot, or its title thereto. Complainant's right to build on Lot 37A obviously does not stand or fall upon any rule regulating the ownership or devolution of property. A fortiori, the decision in *Petway* did not establish or create a rule of property.

We note at this point that, in consideration of the view we have taken of the cause, it will be unnecessary to pass upon the ground relied on by the Chancellor in finding that *stare decisis* did not apply by reason that *Petway* was heard on bill and answer.

Accordingly, complainant's first and second assignments of error are overruled.

Complainant's third assignment is, as follows:

"The Chancery Court erred in failing to hold that the Williamson County Board of Zoning Appeals acted arbitrarily and illegally by failing to consider and be bound by its own prior decision as re-flected by the decision in Petway v. Union Trust Company, and by subsequent events, thus creating an estoppel, estopping that Board from reversing itself and refusing a building permit for Lot 37-A."

We understand complainant's reference to "its own prior decision as reflected by the decision in Petway v. Union Trust Company" as meaning the finding of fact in the *Petway* decree that the resubdivision of Grassland Estates was approved by the Williamson County Planning Commission and by defendant. The words, "and by subsequent events," we take as referring to the building which took place subsequent to the *Petway* case on lots surrounding Lot 37A in Grassland Estates. See Appendix "A".

At this point we feel compelled to state that we have serious doubts that these facts, referred to by complainant and alleged to constitute an estoppel, have been set out in the pleadings in such a way as to bring this issue before the trial court. See Denny v. Wilson County, 198 Tenn. 677, 281 S.W.2d 671 (1955).

However, assuming it is proper for us to consider the estoppel issue, we are of the opinion that doctrine is inapplicable to the instant case.

In Lawrence County v. White, 200 Tenn. 1, 288 S.W.2d 735 (1956), this Court in defining estoppel, adopted the following quote from 19 Am.Jur., § 34, p. 634:

"Equitable estoppel or estoppel in pais is the principle by which a party who knows or should know the truth is absolutely precluded, but at law and in equity, from denying, or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon them thereby, as a consequence

reasonably to be anticipated, charging his position in such a way that he would suffer injury if such denial or contrary assertion were allowed."

In the first place, we cannot see how complainant has changed his position in such a way that he would suffer injury as a result of anything done by defendant. The record reflects that complainant purchased certain lots, including the area which is now Lot 37A, prior to the approval by defendant of the resubdivision plan submitted by complainant. Subsequent to the approval complainant successfully sold and built on these lots until only Lot 37A remained undeveloped. See Appendix "A". Except for Lot 37A, complainant has only gained from its dealings concerning Grassland Estates. As for 37A, complainant has not changed its position at all. The record reflects that no construction has commenced on Lot 37A, nor has complainant incurred any legal obligations, liabilities or costs in regard to this lot.

■ As the *Lawrence County* case, supra, points out, the party seeking to assert the doctrine of estoppel must be one who is "excusably ignorant of the true facts and who had a right to rely" upon the representations of another.

The record indicates that in 1961, Lot 37, being approximately 1½ acres, was carved into three parcels by complainant, one parcel being 37A. Lot 37A then contained substantially less than a half-acre, whereas the applicable zoning ordinance at that time called for a minimum lot size of one-half acre. Therefore, Lot 37A, in its very conception, was in noncompliance with the zoning ordinances. Complainant was presumed to know this fact when it obtained approval by defendant of the resubdivision plan. Cf. City of Knoxville v. Hargis, 184 Tenn. 262, 198 S.W.2d 555 (1947), wherein this Court stated that a landowner is charged with knowledge of city ordinances.

Complainant is also presumed to know that under § 13–410 T.C.A., the building

commissioner would be bound to refuse a permit to build on lots which did not comply with the zoning ordinances and, consequently, that a variance would have to be obtained from defendant, as provided for in § 13–409 T.C.A.

We are of the opinion that complainant acted at its own peril in obtaining approval of, recording, and subsequently developing to the fullest extent possible, this subdivision, when, in fact, complainant knew that certain lots, including 37A, were in noncompliance with the zoning ordinances and that, accordingly, complainant could be denied a building permit or variance.

■ It results that complainant cannot be deemed innocent of the facts with regard to the doctrine of estoppel.

Complainant's third assignment of error is overruled.

■ Complainant's fourth and fifth assignments are that the Chancellor erred in failing to hold that the action of defendant constituted a deprivation of beneficial use of property without due process and a confiscation of property without just compensation.

This Court, in Schneider v. Lazarov, 216 Tenn. 1, 390 S.W.2d 197 (1965), stated the following:

"In the case of Howe Realty Co. v. City of Nashville, 176 Tenn. 405, 141 S.W.2d 904 (1940), we held that when the supervisor of buildings of the City of Nashville recalled a permit to build a gasoline service station in a commercial B district in the City of Nashville before any work was done under the authority of the permit, a subsequently enacted ordinance changing the classification of the district to residence C district was binding on the property owner whose permit had been revoked. We held that since no construction had actually been commenced, an amendatory ordinance of the City Council changing the classification of the district could effectively authorize the supervisor of buildings to recall the

permit, and that having changed the classification of the property in question, the permittee had no vested right, not having begun construction nor incurred liabilities or expenses. We feel this is the prevailing rule on the subject."

As noted previously in this opinion, no construction has commenced on Lot 37A. Under the *Schneider* and *Howe Realty Co.* cases, supra, we do not feel that complainant acquired, at any time, a vested right to build on Lot 37A, in contravention of the zoning laws of Williamson County and the State of Tennessee.

Moreover, we feel that complainant's claim that due process of law has been denied is severely undermined by complainant's own equitable position in this case, to wit: that complainant recorded a subdivision plan which it knew could not be built on without obtaining a variance.

Accordingly, complainant's fourth and fifth assignments of error are overruled.

The judgment of the trial court is affirmed. Costs will be assessed against the complainant.

DYER, C. J., and CHATTIN, HUMPHREYS and McCANLESS, JJ., concur.