**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0688n.06

**No. 19-6327**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

RONALD W. OGLE, BETTY OGLE, JERRY KERLEY, MARK T. WHITE, and JOHN C. SCHUBERT, dba HIGH BRIDGE DEVELOPMENT PARTNERSHIP,

  Plaintiffs-Appellants,

v.

SEVIER COUNTY REGIONAL PLANNING COMMISSION and SEVIER COUNTY, TENNESSEE,

  Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Dec 09, 2020
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

OPINION

BEFORE: ROGERS, SUTTON, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** The High Bridge Development Partnership wanted to build a large subdivision in Sevier County, Tennessee. It submitted a concept plan to the Regional Planning Commission that included a 40-foot right-of-way, though the subdivision regulations required a 50-foot right-of-way. The Commission denied the plan, citing the right-of-way problem. The Partnership presented information putatively solving the problem and the High Bridge subdivision plan was initially approved. Then, following further investigation, the plan was denied. The Partnership ultimately sued, alleging violations of its due process and equal protection rights. After a bench trial, the district court found in favor of the Defendants. We **AFFIRM**.

## I.   BACKGROUND

The Partnership develops property in Sevier County, which extends into Great Smoky Mountains National Park.  In 2005, it purchased the 942.3-acre piece of property at issue (the Property), planning to build at least 400 houses.  The Property borders Miller's Creek, a much smaller subdivision development, to the north, and the Park lies to the south.  The only road to both Miller's Creek and the Property is Scottish Highland Way, which passes through the Foothills Parkway area.  Sevier County requires all new subdivisions to comply with its regulations, including those governing right-of-way widths.  The regulations categorize Highland Way as a "Minor Collector Street," so it must have a 50-foot right-of-way.  It has a 50-foot right-of-way along most of its length, but the parties disagree about the right-of-way's width in the Foothills Parkway stretch:  the Partnership maintains that it remains 50 feet, but the Commission contends that it narrows to 40 feet.  That discrepancy gave rise to this case.

### A.      Sevier County's Plat Approval Process

During this case, a developer that wanted to build a subdivision in Sevier County had to follow a tripartite procedure and appear twice before the Commission.  First, it had to prepare a concept plan and request that the Commission preliminarily approve it.  For a developer to submit a plan, it had to "meet[] all the required standards of design" or request specific variances, and for the Commission to approve a concept plan, it had to find that the plan complied with all of those standards, including right-of-way widths.  If it disapproved the plan or requested modifications, it was required to give reasons in writing. Two members of the Commission and Jeff Ownby, Sevier County's Planner, testified that they could not recall an instance when the Commission intentionally denied a concept plan that satisfied the regulations, and typically, the Commission did not revoke a concept plan approval after the fact.  Once the developer obtained the Commission's approval, it could begin preparing subsequent documents, making street

improvements, and installing utilities. Beforehand, though, it was encouraged to "consult early and informally" with the Commission "for advice and assistance." Second, the developer had to create a design plan to inform the Commission's technical staff about how it planned to construct the subdivision. Any construction work carried out before the design plan was approved would be "at the subdivider's own risk." Third, it had to submit the final plat to the Commission for approval, after which the plat could be recorded.

The regulations did not mandate the Commission to approve a plan that complied with the regulations at any of these three stages. At the preliminary approval stage, the regulations directed the Commission merely to consider the plan:

> Within sixty (60) days after submission of a concept plan, the planning commission will review it and indicate its approval, disapproval, or approval subject to modifications. If a concept plan is disapproved, reasons for such disapproval will be stated in writing. If approved subject to modifications, the nature of the required modifications will be indicated.

No reasons for disapproval were specified, and the regulations did not speak in terms of "must" or "shall" approve, but warned that "[a]ny construction work carried out by the subdivider prior to design plan approval . . . shall be at the subdivider's own risk." Similarly, at the final plat stage, they said that the Commission "shall approve or disapprove" the final plat and give reasons if it disapproves. The regulations did not explicitly provide for a revocation of approval after an approval was granted at any stage.

B. **Subdivision Developments**

About three years before the Partnership purchased the Property, the Commission approved four plats for Miller's Creek, each of which labeled the Foothills Parkway stretch of Highland Way as a 40-foot right-of-way or did not depict the right of way at all. The subdivision contained 12 to 14 tracts. Though it is unclear from the record whether the Miller's Creek subdividers petitioned

for variances or were granted variances to permit the 40-foot right-of-way, trial testimony established that the plats were ultimately approved without variances. Jerry McCarter, an attorney working for Sevier County, opined that there was a variance, and the Commission argues that it relied on that opinion. The Commission's Chairman subsequently acknowledged that the Miller's Creek approvals were mistakes because they did not include the required 40-foot rights-of-way.

The Partnership purchased the Property in February 2005 to develop the High Bridge subdivision. About two years later, the Southern Design Group ("SDG"), a firm the Partnership retained, contacted Ownby for initial consultation about the Property per the regulations' suggestion. SDG staff met with Ownby multiple times concerning the Commission's review processes. From the time it purchased the Property, the Partnership was aware that Highland Way's right-of-way was 40 feet, as noted on the deed, and that "this was going to be an issue with the Planning Commission." In February or March 2007, the Partnership submitted its concept plan to the Commission, indicating Highland Way's 40-foot right-of-way. The concept plan provided for 400 to 450 tracts. The Commission denied the concept plan because it did not comply with the rights-of-way requirement. SDG and the Partnership returned to the Commission on April 10, 2007, with a plat recorded in 1971 that depicted Highland Way with a 50-foot right-of-way. Ownby agreed with them, and the Commission approved the concept plan based on this evidence.

Some members of the Commission questioned whether that 50-foot right-of-way continued to exist 36 years after it had been recorded. The Chairman testified that the Commission wanted to "get it right" and did not necessarily intend to overturn the earlier approval, so it asked Ownby to continue researching the right-of-way. Both McCarter and a title abstractor told Ownby that the 50-foot right-of-way no longer existed. John Schubert, the Partnership's managing partner, then met with Ownby and a Park Service representative to find an alternate right-of-way.

On May 8, 2007, the Commission held another meeting. Four members of the public spoke in favor of rescinding the High Bridge approval. Commissioner Ogle moved to add High Bridge to the meeting's agenda; after some discussion, the commissioners voted to do so and then voted, 7–6, to rescind the Partnership's concept plan approval.

The Partnership asserts that it did not receive notice that the Commission would discuss High Bridge at the May 8 meeting. None of the Partnership's members or anyone representing it attended the meeting. Prior to the meeting, the Partnership was generally aware of the Commission's concerns about High Bridge, Schubert having met with Ownby and the Park Service. In the following months, the Partnership's representatives met with Ownby multiple times to discuss applying for a variance for the right-of-way. The Partnership resubmitted the High Bridge concept plan to the Commission at a subsequent meeting without applying for a variance, but Ron Ogle, a partner, moved to remove it from the meeting's agenda.

The Commission took up High Bridge again at its December 9, 2008, meeting. The Partnership had submitted an identical concept plan, again without applying for a variance. Three speakers argued that the right-of-way was 40 feet wide. The Commission then voted to deny the concept plan because it did not "provide for access directly to a county road or access via a 50' private permanent easement to a county road." At the same meeting, the Commission denied another development's concept plan for the same reason.

After the Partnership filed suit, the district court held a bench trial, finding in the Commission's favor. The Partnership then filed a motion to alter or amend the findings of fact and conclusions of law and the judgment, which the district court denied. The Partnership timely appealed.

## II.    DISCUSSION

"Following a bench trial, 'we review a district court's factual findings for clear error and its legal conclusions de novo.'" *Acosta v. Cathedral Buffet, Inc.*, 887 F.3d 761, 764 (6th Cir. 2018) (quoting *Muniz-Muniz v. U.S. Border Patrol*, 869 F.3d 442, 444 (6th Cir. 2017)).  We review denials of Rule 59(e) motions to alter or amend the judgment under the abuse-of-discretion standard, but denials of Rule 59(e) motions "based on legal error" de novo.  *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 811 (6th Cir. 2020).

### A.    Waiver

At the outset, the Commission argues that the Partnership has waived the due process argument that its "protected property interest vested when the [Commission] approved" the concept plan.  The Partnership responds by pointing to its trial brief that discussed the rescission of the concept plan approval and contended that it had "a property interest in the Property proposed and its development, and the right to approval of plans that comply with County Regulations."

Typically, "an argument not raised before the district court is waived on appeal to this Court," *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008), and "the failure to present an issue to the district court forfeits the right to have the argument addressed on appeal," *Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006); *see generally Wood v. Milyard*, 566 U.S. 463, 473 (2012) ("[A]ppellate courts ordinarily abstain from entertaining issues that have not been raised and preserved in the court of first instance.").  A party waives a claim by "knowingly and intelligently relinquish[ing]" it, particularly when shown by record evidence, and forfeits a claim by "merely fail[ing] to preserve" it.  *Cradler v. United States*, 891 F.3d 659, 665 & n.1 (6th Cir. 2018) (quoting *Wood*, 566 U.S. at 470 n.4).  But if a party makes the argument in a different manner that can be fairly interpreted as "another way of saying" the point, it likely did not forfeit that claim.  *Haywood v. Hough*, 811 F. App'x 952, 959 n.1 (6th Cir. 2020).

Here, the Partnership did not waive its argument that the Commission's initial approval of its concept plan created a property interest. A review of the record reveals no instance when the Partnership waived the argument by explicitly and knowingly relinquishing it. Though whether the Partnership forfeited the argument may be a closer call, its arguments to the district court were other ways of saying the argument it now makes. So, we analyze the Partnership's due process claims through that lens.

### B.  Due Process

The Partnership argues that "[w]hen the Commission approved [its] concept plan on April 10, 2007, it created a protected property interest by giving the Partnership a legitimate claim of entitlement to the initial phase of concept plan approval." The Commission responds that no property interest arose because there was no guarantee of High Bridge's ultimate approval given the subsequent stages of the planning process.

Establishing a substantive or procedural due process violation requires first showing "the existence of a constitutionally-protected property or liberty interest" that was taken or infringed. *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992). The party claiming the interest must demonstrate a "legitimate claim of entitlement" to the benefit—that is, "more than an abstract need or desire for it" and "more than a unilateral expectation of it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). The party cannot claim a property interest in the governmental procedure itself, but rather in the product of that procedure. *Richardson v. Township of Brady*, 218 F.3d 508, 517–18 (6th Cir. 2000).

"Whether a person has a property interest is traditionally a question of state law," but "[f]ederal constitutional law . . . 'determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause.'" *Tollbrook, LLC v. City of Troy*, 774 F. App'x 929, 934 (6th Cir. 2019) (quoting *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 856

(6th Cir. 2012)). Tennessee courts have noted that "the mere approval . . . of a subdivision plat does not give a property owner a vested right to develop his or her property in contravention of the applicable zoning restrictions." *Metro. Gov't of Nashville & Davidson Cnty. v. Barry Const. Co.*, 240 S.W.3d 840, 853 (Tenn. Ct. App. 2007) (citing *Union Trust Co. v. Williamson Cnty. Bd. of Zoning Appeals*, 500 S.W.2d 608, 617 (Tenn. 1973)). This is particularly true when substantial construction has not yet begun or related liabilities have not been incurred. *State ex rel. SCA Chem. Waste Servs., Inc. v. Konigsberg*, 636 S.W.2d 430, 437 (Tenn. 1982). And the Tennessee legislature has expressly recognized "the prerogatives and authority of local elected officials with respect to land-use matters." 2014 Tenn. Pub. Acts, Ch. 686, at 1.[1]

In the analogous context of zoning ordinances, the Tennessee Court of Appeals has explained that "[o]ne of the requirements for establishing vested rights in a prior ordinance or regulation is a *final* governmental approval of development plans. In a majority of states, including Tennessee, that approval generally means a building permit." *CK Dev., LLC v. Town of Nolensville*, No. M2010-00633-COA-R3CV, 2012 WL 38287, at *15 (Tenn. Ct. App. Jan. 6, 2012) (emphasis added); *see also Ready Mix, USA, LLC v. Jefferson County*, 380 S.W.3d 52, 66 n.18 (Tenn. 2012). The court warned against "implicitly equat[ing]" a preliminary concept plan approval that "was conditional, subject to modifications, and required additional approval" with a final approval or building permit. *CK Dev.*, 2012 WL 38287, at *15.

---

[1] Effective in 2015, after the events of this case, the Tennessee legislature amended the Tennessee Vested Property Rights Act, which covers subdivision regulations, to provide that

> [a] vested property right shall be established with respect to any property upon the approval, by the local government in which the property is situated, of a preliminary development plan *or* a final development plan where no preliminary development plan is required by ordinance or regulation *or* a building permit allowing construction of a building where there was no need for prior approval of a preliminary development plan for the property on which that building will be constructed.

Tenn. Code Ann. § 13-3-413(b) (2020) (emphasis added).

In *Silver*, we drew a similar distinction between stages of the plan approval process for determining whether a property interest could exist. 966 F.2d at 1036. If the approval comes at a point in the process when the government body has "the discretion to deny [the plan] even if [the developer] complied with certain minimum, mandatory requirements, then [the developer] would not have a 'legitimate claim of entitlement' . . . in the approval of his plan," and thus "no property right." *Id.* (quoting *G.M. Eng'rs & Assocs., Inc. v. West Bloomfield Township*, 922 F.2d 328, 331 (6th Cir. 1990)). But if the approval comes at a point in the process when "state law circumscribes the discretion of [the government body] to such an extent that approval of the particular use [of the property] was mandatory once [the developer] met certain minimal requirements, then a property interest could exist." *Id.*; *see generally Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) ("Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion.").

In subsequent cases, we applied this distinction. In *Nasierowski Bros. Inv. Co. v. City of Sterling Heights,* 949 F.2d 890 (6th Cir. 1991), the developer obtained "a favorable opinion from the City stating that the proposed development was permitted, as of right, under the City's relevant zoning regulations" prior to any construction and then purchased the property. *Id.* at 891. A council member who "lived in the immediate vicinity of [the] parcel" later expressed his opposition to the development, and the city council passed an ordinance that rendered the development effectively impossible. *Id.* at 891–93. The court held that the developer had a property interest in the first zoning classification as expressed in the city's opinion, "securely vested by [his] engagement in substantial acts taken in reliance, to his detriment, on representations from and affirmative actions by the City." *Id.* at 897. This holding largely turned on a question of Michigan law. *See id.* (quoting *Roth*, 408 U.S. at 577) ("Nasierowski's property interest . . . ,

if any, depends not on the federal Constitution, but rather on 'existing rules or on understandings that stem from an independent source, such as state law.'").

More recently, in *EJS Properties*, we examined a situation in which the city had issued an "early-start building permit" which allowed "initial renovations." 698 F.3d at 859. Importantly, that permit "did not entitle [the developer] to the ultimate re-zoning change or to a full permit to reconstruct the relevant property." *Id.* The applicable regulations specified that this type of permit was limited to early stages of construction and that all work was performed at the permittee's risk. *Id.* We determined that even if the developer had a property interest in the permit, when the city subsequently rezoned the property (rendering further construction illegal), it did not violate the developer's due process rights to the interest the permit conveyed. *Id.*

In *Tollbrook*, we synthesized these cases and restated their guiding principles. 774 F. App'x at 934–35. We concluded that "a property owner may have a property interest in the existing zoning classification of his or her property or in a discretionary benefit after it has been conferred." *Id.* at 934 (citing *EJS Props.*, 698 F.3d at 856). And "a landowner may have a property interest in a previously approved building permit where the city does not retain discretion to modify its terms." *Id.* But "[a] party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *Id.* at 935 (quoting *EJS Props.*, 698 F.3d at 855). Therefore, to establish a property interest in an approval, a party must show that the government body "lacked the 'discretion to deny [the benefit] if [the party] complied with certain minimum, mandatory requirements.'" *Id.* (quoting *EJS Props.*, 698 F.3d at 855).

The Sevier County regulations derived their authority from Tennessee statutes. The statutes did not explicitly grant or deny discretion to regional planning commissions to deny

concept plans that complied with all applicable regulations. *See, e.g.*, Tenn. Code Ann. §§ 13-3-104, -403 (2008) (discussing commissions' powers and duties and listing permissible goals of subdivision regulations). Certain provisions, however, indicated the existence of that discretion. *See, e.g.*, *id.* § 13-3-104(d) ("In general, the commission has such powers as may be necessary for it to perform its functions and to promote regional planning."). The fact that the Commission heard testimony from members of the public also implicitly suggests that its decisions were discretionary; even if a concept plan complied with all the applicable regulations, community members' disfavor might cause the commission to disapprove it.[2] And, importantly, even after concept plan approval, the Partnership needed to obtain two more approvals, each with its own requirements.

Based on these cases, we conclude that the Commission's initial approval of the Partnership's concept plan did not confer a property interest. The revocation of the concept plan approval (which, it bears repeating, came before the final plan approval stage) was tantamount to a realization that the Partnership had not "complied with certain minimum, mandatory requirements." *Silver*, 966 F.2d at 1036; *see also Tollbrook*, 774 F. App'x at 935. Because the only reason for the revocation and subsequent denials was the right-of-way, at issue is not whether the Commission could deny the Partnership's concept plan after it complied with all of the "minimum, mandatory requirements." The Partnership had not done so. Nothing in the regulations or their associated statutory provisions affirmatively suggests the circumscription of discretion to the extent that would confer a property right here. *See Tollbrook*, 774 F. App'x at 935.

Aspects of this case align with *Nasierowski*, in that the initial concept plan approval indicated the Commission's opinion that the concept plan complied with the regulations, and that

---

[2] Some community members' comments on High Bridge in particular address both compliance with the regulations and other factors, such as "the impact it would have on the community."

the Commission then effectively halted future development by rescinding the approval. 949 F.2d at 891. But the Partnership did not carry out any "substantial acts taken in reliance, to [its] detriment, on representations from and affirmative actions by" the Commission.[3] *Id.* at 897. Instead, it purchased the Property well before seeking any input from the Commission about the development's feasibility. For years prior to speaking with Ownby about the Commission's review, the Partnership was aware that Highland Way's right-of-way was 40 feet. It was listed as such on the deed. Schubert himself testified at trial that he knew the right-of-way would be problematic when the development began. In *Nasierowski*, by contrast, the developer did not even purchase the property until receiving confirmation from the city that the proposed use would comply with zoning regulations. *Id.* at 891.

Ultimately, we find *EJS Properties* to be instructive. Just like the "early-start building permit" in that case, the concept plan approval did not give the Partnership the right to build the entire 400-to-450-tract subdivision. *EJS Props.*, 698 F.3d at 859. Even if the concept plan were approved and the Partnership began utility and road construction, it still had to obtain final plat approval prior to proceeding further. Any construction before final approval was explicitly at its own risk, just as in *EJS Properties. Id.* Because the concept plan approval did not come at the final stage in the process, and the Commission could still exercise discretion prior to design plan approval, the April 2007 concept plan approval did not create a cognizable property interest. The district court correctly held that the Partnership's due process claims fail at the first step. *See Silver*, 966 F.2d at 1036. Because the Commission has not demonstrated the existence of a

---

[3] Though the existence of the property interest in *Nasierowski* was a question of Michigan law, as opposed to Tennessee law like the one at issue here, both states' laws deemed substantial acts (like construction) necessary for a property right to vest. *Nasierowski*, 949 F.2d at 897; *Ready Mix*, 380 S.W.3d at 66 n.18.

constitutionally protected property interest, we need not reach the next steps of the substantive and procedural due process analyses.  *See id.*

### C.    Equal Protection

Finally, the Partnership argues that the rescission of the concept plan approval violated its equal protection rights because the Commission did not revoke  other subdividers' concept plan approvals.  It also contends that the denial of the concept plan based on the 40-foot right-of-way was an equal protection violation because Miller's Creek was approved with the same problem.

States may not "make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference."  *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).  "The 'rational basis' test means that courts will not overturn government action 'unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational.'"  *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005) quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 84 (2000)).  The state body "has no obligation to produce evidence to sustain the rationality of its action; its choice is presumptively valid."  *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 790 (6th Cir. 2005).  Moreover, the mere fact that "in practice [the action] results in some inequality" is insufficient to find an equal protection violation.  *Id.* at 790–91 (quoting *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 316 n.7 (1993)).

The Partnership brings a "class of one" claim, alleging that it "has been intentionally treated differently from others similarly situated and . . . that there is no rational basis for the difference in treatment."  *Johnson v. Morales*, 946 F.3d 911, 939 (6th Cir. 2020) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)).  "The first element requires that the plaintiff and the others who were treated differently were 'similarly situated in all relevant

respects.'" *Id.* (quoting *EJS Props.*, 698 F.3d at 865). The second obligates the plaintiff to "demonstrate that a government action lacks a rational basis in one of two ways: either by negativ[ing] every conceivable basis which might support the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." *Id.* (quoting *Warren*, 411 F.3d at 711).

When completed, High Bridge would contain more than 30 times the number of tracts in Miller's Creek. Highland Way, which was a private road as opposed to a county road, was the only way to access both Miller's Creek and High Bridge's proposed location. So, though the Partnership contends that Miller's Creek was comparable to High Bridge, it was not. The Commission was entitled to take these facts into account. Moreover, the Commission approved Miller Creek in error, and other concept plans were denied for lack of a 50-foot right-of way.

Ultimately, the Partnership has not identified any truly similarly situated comparators who the Commission treated differently. Even if it had, it still has not convincingly ruled out the many rational bases for enforcing the right-of-way requirement or demonstrated animus on the Commission's part. The district court did not err in finding that Commission did not violate the Partnership's right to equal protection.

## III. CONCLUSION

For the reasons discussed above, we **AFFIRM** the district court's findings of fact and conclusions of law and denial of the Partnership's motion to amend or alter the judgment.