**NASIEROWSKI BROTHERS INVESTMENT COMPANY, Plaintiff–Appellant,**

v.

**CITY OF STERLING HEIGHTS, et al., Defendants–Appellees.**

No. 90–1437.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 25, 1991.

Decided Nov. 22, 1991.

Phillip G. Alber, Lita Masini Popke (argued and briefed), Lawrence M. Scott, Magar, Monahan, Donaldson & Alber, Detroit, Mich., for plaintiff-appellant.

Marcia L. Howe, Carol A. Rosati, Cummings, McClorey, Davis & Acho, Livonia, Mich., Bert T. Ross (briefed), Paul J. O'Reilly (argued), O'Reilly, Rancilio, Nitz, Andrews & Turnbull, Sterling Heights, Mich., for defendants-appellees.

Before MARTIN, KRUPANSKY and NORRIS, Circuit Judges.

KRUPANSKY, Circuit Judge.

Plaintiff-appellant, the Nasierowski Brothers Investment Company (Nasierowski), appealed the entry of summary judgment in favor of defendants-appellees, the City of Sterling Heights, Michigan (the City), et al.,[1] in this civil rights action under 42 U.S.C. § 1983. In an order entered March 5, 1990, the district court ruled that Nasierowski's cause of action was not ripe for adjudication, and further held that Nasierowski had failed to state a cognizable constitutional claim.

This controversy stems from Nasierowski's purchase in April, 1986 of an undeveloped parcel of real estate located in a sporadically developed industrial and commercial sector of the City. Nasierowski desired to develop a retail and warehouse facility on the property, and the acquisition of the property was made expressly contingent on Nasierowski's securing a favorable opinion from the City that the proposed development was permitted, as of right, under the City's relevant zoning regulations. Responsible City officials responded favorably and informed Nasierowski that the parcel was situated within a zone B-3, a "general business district" classification.

Relying upon the City's representation, Nasierowski purchased the property, commenced architectural and engineering site plans for the development, and applied to the City's planning commission for site plan approval. On December 2, 1988, the City issued its preliminary site plan approval conditioned on Nasierowski's undertaking, at his personal expense, the design and construction of certain improvements to the public roads accessing the proposed development. Because Nasierowski believed that no such site plan requirements had been imposed previously upon similar developments in the area, he applied to the City Council (Council) for a variance from the requirements. On May 15, 1989 and June 6, 1989, Nasierowski appeared before the Council to present his arguments.

The recorded minutes of these two hearings included numerous comments from councilman Stephen Rice (Rice) expressing his personal opposition to Nasierowski's proposal. At the May 15 hearing, Rice, who lived in the immediate vicinity of Nasierowski's parcel, characterized the proposed development as "outrageous," and urged that the affected parcel and its environs should be rezoned for residential use

---

even though the area had already been developed commercially. Prior to the June 6 hearing, Nasierowski requested that Rice recuse himself from consideration of his variance application, citing what Nasierowski described as Rice's "personal bias." Rice refused to disqualify himself from voting upon the requested variance. After the June 6 hearing, the Council denied Nasierowski's requested variance.

While Nasierowski was engaged in the protracted process of seeking a variance from the City Council, the City planning commission drafted legislation for the adoption of a new City-wide master zoning plan. To this end, the planning commission conducted a series of six public hearings from May to August of 1989. The public was provided with published notice of the hearings before the planning commission, and was afforded an opportunity to object to any aspect of the revised general zoning ordinance, as proposed by the planning commission and as illustrated on a map available for public inspection at City Hall.

The proposed master zoning plan indicated that Nasierowski's property would be reclassified from B–3 to C–3. This proposed rezoning placed greater restrictions upon the general area wherein Nasierowski's property was situated, but, although the C–3 zone was substantively distinct from the pre-existing B–3 zone, it nevertheless permitted Nasierowski's proposed development as of right and thus "paralleled" the B–3 designation. For this reason, Nasierowski entered no objections to the new ordinance.

Under Michigan law, in municipalities with a planning commission, changes in the general zoning ordinance are initiated by the planning commission and forwarded, after a public notice, comment and hearing process, to the city council with a recommendation for adoption. M.C.L. § 125.-584(3). Pursuant to this legislative mandate, at the conclusion of its six public hearings, the planning commission submitted its final recommendation to the City Council for enactment into law. The City Council published the proposed zoning ordinance, as recommended by the planning commission, together with an accompanying map, along with notice of public hearings at which citizens would be afforded a final opportunity to comment on the new ordinance. Accordingly, the Council held two public hearings on September 5 and 13, 1989. Nasierowski did not attend these hearings because the new zoning ordinance, as proposed and recommended by the planning commission *and as indicated in the public notices issued by the City Council,* would have had no adverse impact on his longstanding plans to develop the parcel for retail and warehouse uses.

At the conclusion of the public hearing held on September 13, 1989, Council convened in executive session.[2] Minutes of that meeting disclosed that Council was prepared to adopt the zoning ordinance that had been recommended and proposed by the planning commission *in toto*, without modification. At the inception of the meeting, however, councilman Rice insisted that the planning commission's recommended ordinance be amended so as to rezone a narrow strip of land consisting of twelve to fifteen parcels from C–3 (as recommended by the commission) to O–1, a more restrictive classification that permitted only office development. The land subject to Rice's proposed amendment conveniently encompassed Nasierowski's property. Rice further suggested that two existing, non-conforming uses (a dry cleaner and a heating contractor) be selectively exempted from the O–1 zone.[3]

Rice's motion passed by a vote of 5 to 2. (The two dissenting Council members expressed concern that the adoption of an O–1 zone would have a detrimental impact on

---

**2.** Executive sessions of Council are conducted in Council chambers, however, the public is barred from commenting or participating in Council's actions.

**3.** It appears that the balance of the parcels in the affected area were, like Nasierowski's, undeveloped at the time.

Nasierowski's plans, and refused to adopt an O-1 zone without first affording Nasierowski a public hearing and opportunity to object.) For several days after Council's adoption of the new ordinance, as amended by Rice's motion, Nasierowski continued his efforts to resolve the controversy pertaining to his site plan specifications. Nasierowski was on the verge of accomplishing his objective by receiving final site plan approval (*i.e.*, a building permit) when the City Manager directed the responsible officials to reject the permit application in light of the recently adopted zoning ordinance. This was the first indication Nasierowski received that his property had been rezoned O-1. The City rescinded the previously issued preliminary site plan approval, totally aborting Nasierowski's project.

Without applying to the City's Board of Zoning Appeals for a variance from the newly enacted O-1 zoning restriction, Nasierowski commenced suit in federal district court. In his complaint, Nasierowski alleged, among other things, that he had been denied *procedural* due process in violation of the fourteenth amendment when Council, acting in executive session, amended the proposed zoning ordinance without affording him an opportunity to be heard.[4] Nasierowski requested a permanent injunction prohibiting the City from enforcing the allegedly invalid O-1 zoning classification against the property.

The district court granted the City's motion for summary judgment, concluding that Nasierowski's constitutional claim was not ripe for adjudication because he had failed to seek a variance from the Board of Zoning Appeals, as he was entitled to do under M.C.L. § 125.585.[5] Although unnecessary to its decision, the district court further concluded that Nasierowski had no

protected property interest in the C-3 zoning classification, and thus did not have a colorable due process claim. In the trial court's view, no such property interest could have vested under Michigan law until Nasierowski had secured a building permit and actually commenced construction on the site.

The district court's rejection of Nasierowski's procedural due process claim for failure to exhaust his administrative remedies was premised upon the Supreme Court's decision in *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). In *Williamson*, the Court resolved that a regulatory *taking* claim under the fifth and fourteenth amendments is not ripe for adjudication until the aggrieved landowner has "obtained a final decision regarding how it will be allowed to develop its property." *Id.*, at 190, 105 S.Ct. at 3118. Thus, a *taking* claim cannot be adjudicated in federal court until the plaintiff has failed in his or her efforts to obtain a use variance from the appropriate local regulatory body.

The trial court's reliance on *Williamson* was improper, because, unlike the plaintiff in that case, Nasierowski did not allege an unconstitutional "taking" of his property under the fifth and fourteenth amendments. To the contrary, Nasierowski asserted that he was deprived of *procedural* due process when he was not accorded a public hearing at which to challenge the reclassification of the zone in which his property was situated. With respect to the requirement of exhaustion under *Williamson*, other circuit courts have drawn a vital distinction between procedural due process claims and other varieties of constitutional

---

4. In other counts, Nasierowski alleged a violation of equal protection, violation of state laws, and separate causes of action "arising under" 42 U.S.C. § 1983. Pendent state law issues, as well as the question of whether Nasierowski was deprived of his right to equal protection, were not addressed by the court below and are not currently at issue. The only issue properly presented for review in this appeal is whether Nasierowski was deprived of procedural due process in the passage of the City's new zoning ordinance. The court deems this to be a consti-

tutional cause of action for damages and equitable relief pursuant to 42 U.S.C. § 1983.

5. The statute authorizes local boards of zoning appeals to grant variances when "carrying out the strict letter of the [zoning] ordinance" would result in "practical difficulties or unnecessary hardship." M.C.L. § 125.585(9). A person aggrieved by an adverse decision of the board of zoning appeals may seek appellate review in a state circuit court. M.C.L. § 125.585(11).

grievances stemming from land use decisions. In *Landmark Land Co. v. Buchanan*, 874 F.2d 717 (10th Cir.1989), for instance, the Tenth Circuit defined a bright line between procedural due process claims and other varieties of constitutional grievances stemming from local land use decisions and concluded that a municipality's failure to issue building permits without first affording the applicant an opportunity to be heard gave rise to an adjudicable, ripe procedural due process claim without the necessity of the landowner first seeking a variance from the local zoning appeals board. As the *Buchanan* court noted, "[t]here are many intangible rights that merit the protection of procedural due process although their infringement falls short of an exercise of the power of eminent domain for which just compensation is required under the Fifth and Fourteenth Amendments." *Id.*, at 723 (citing cases).

Sixth Circuit precedent reflects that this circuit adheres to the view expressed by the Tenth Circuit in *Buchanan*, and hence a procedural due process claim is instantly cognizable in federal court without requiring a final decision on a proposed development from the responsible municipal agency. In *Hammond v. Baldwin*, 866 F.2d 172, 176 (6th Cir.1989), the court noted that under *Williamson* "the type of. claim is crucial to determining whether finality is required." *Id.* (citing *Williamson*, 473 U.S. at 194, 105 S.Ct. at 3120). The court in *Hammond* cited *Williamson* for the proposition that "if the [claimed] injury is the *infirmity of the process*, neither a final judgment nor exhaustion [of administrative remedies] is required." *Id.* (emphasis added). Conceptually, in the case of a procedural due process claim, "the allegedly infirm process is an injury in itself," *id.*, whereas, in the context of a takings claim, the alleged injury—a diminution in property value—cannot be assessed with any degree of certainty until the municipality arrives at a final decision as to how the property owner will be permitted to develop his property.

The rationale for not requiring *Williamson* "finality" as a prerequisite to a procedural due process claim is well illustrated in the case at bar. Nasierowski's injuries accrued and attached immediately when Council convened in executive session and materially deviated from the recommendations of the planning commission, thus subverting the purpose of the duly conducted notice and comment process. The passage of a general zoning ordinance placing Nasierowski's property into a zone that had neither been recommended by the planning commission nor noticed and submitted to public scrutiny, as required under M.C.L. § 125.584(3), constituted an ultra vires act on the part of the City Council. Compare *Castle v. McLaughlin*, 270 F.2d 448 (D.C.Cir.1959), in which the court invalidated the passage of a zoning ordinance enacted under similar circumstances, because of a wide disparity between the zoning map presented for public comment and the map eventually adopted by the District's zoning commission.

Oblivious to the passage of Council's zoning ordinance, Nasierowski was cooperating with City planning officials to resolve comparatively minor disputes over the specific site plan requirements, and was on the verge of receiving a building permit under the authority of either the old B–3 zone or the parallel C–3 classification that everyone, including employees of the City's planning and engineering departments, had concluded was applicable to the parcel. As a result of councilman Rice's legally questionable conduct and problematic, self-interested political maneuvering, Nasierowski was stripped of his site plan approval and left with a parcel of property that he would never have purchased but for the City's assurances that it could be developed for retail and warehousing purposes. In the absence of these assurances, and in the absence of the City's conferral of preliminary approval on the project, Nasierowski would not have materially changed his position, to his significant detriment, by purchasing the land. In sum, Nasierowski's injury stemming from the deprivation of procedural due process was immediately sustained and concretely felt, notwithstanding the absence of a "final" decision from the City concerning the appropriate development of the property.

Nasierowski's situation was nearly identical to that of the plaintiff in *Harris v. County of Riverside*, 904 F.2d 497 (9th Cir.1990). In *Harris,* the plaintiff property owner purchased a parcel of desolate land in the desert near Palm Springs, California. Plaintiff commenced operation of an all-terrain-vehicle rental facility on the property, a use that was permitted under the existing CPS (commercial) zone. Without notice to the plaintiff, the county proceeded to pass a new general zoning ordinance that re-designated plaintiff's land for exclusively residential use. The county informed plaintiff that he "would have to pay ... $2,400 to $3,000 to file an application to change the zoning back to CPS." 904 F.2d at 499.

In response to the county's claim that *Williamson* barred adjudication of plaintiff's procedural due process claim until he petitioned the county for a variance, the Ninth Circuit concluded that the exhaustion of the variance avenue was not necessary because the plaintiff had challenged the "rezoning decision in isolation, as a single decision with its *own consequences....*" *Id.* at 501 (emphasis added). Without affording him any sort of notice or opportunity to object, the county had placed plaintiff in a position where he would have to pay between $2,400 and $3,000 to "regain the commercial use of his land." In the court's view,

> [e]ven if the County has not made a final and authoritative determination of the development allowed on Harris' property, he has been deprived of the commercial use of his land and must pay $2,400 to $3,000 to either regain that use, or prompt the County to make a final determination of how he can use the land. The fee and the deprivation of commercial use of his land amount to actual, concrete injuries which are separate from any taking [plaintiff] may have suffered.

*Id.*[6]

*Harris* is essentially indistinguishable from the case at bar. Like the plaintiff in *Harris,* Nasierowski was not provided with notice of a proposed change in the zoning ordinance, a change that would exert a severely detrimental impact on his ability to use the property in a manner consistent with his legitimate expectations—expectations that the City, itself, had encouraged. To the contrary, the legal notices announcing the public hearings at which the proposed reclassification legislation was to be considered deceived Nasierowski into abstaining from comment. Also like the plaintiff in *Harris,* Nasierowski was placed in a position where he would be required to expend considerable time, effort, and money to restore the status quo ante. Accordingly, because the Council's passage of the new zoning ordinance, with Rice's amendment, was an act that *in and of itself* inflicted immediate injury on Nasierowski, the procedural due process claim was ripe for federal adjudication without requiring Nasierowski to first seek relief from the City's board of zoning appeals. See also *Smithfield Concerned Citizens v. Town of Smithfield,* 907 F.2d 239, 242 (1st Cir.1990) (quoting *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 386, 47 S.Ct. 114, 117–18, 71 L.Ed. 303 (1927)), in which the First Circuit recognized an exception to *Williamson's* finality requirement in cases where the plaintiff landowner—without first seeking a variance—asserts a substantive due process claim stemming from the very "existence and maintenance" of an allegedly unlawful zoning ordinance.

Having concluded that Nasierowski's claim is ripe for adjudication, this court must then consider: 1) Nasierowski's right to be heard by the City Council prior to its passage of the new zoning ordinance; and 2) whether Nasierowski was deprived of a protected property interest as a result of Council's actions.

■ The argument that City Council's enactment of a general zoning law consti-

---

**6.** *Harris* marks a departure from the Ninth Circuit's suggestion in *Herrington v. County of Sonoma,* 857 F.2d 567, 569 n. 1 (9th Cir.1988), *amending* 834 F.2d 1488, 1495 (1987), *cert. denied,* 489 U.S. 1090, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989), to the effect that *Williamson's* finality rule applies across the board to all types of constitutional claims, whether anchored in the takings clause, the procedural due process clause, or the equal protection clause. *Harris* applies when the alleged deprivation of procedural due process results in the instantaneous infliction of a concrete injury.

tuted a legislative act to which due process constraints do not attach may have merit in the abstract, but it is inapplicable to the facts developed by the record in this case. When faced with the same contention, the *Harris* court expressed itself in terms that apply with equal force to the dispute now before us:

> [W]e find little guidance in formalistic distinctions between "legislative" and "adjudicatory" or "administrative" government actions. As the Supreme Court impliedly recognized in *Bi–Metallic Inv. Co. v. State Board of Equalization* [239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915)] the character of the action, rather than its label, determines whether those affected by it are entitled to constitutional due process.

*Harris*, 904 F.2d at 501–02. Governmental determinations of a general nature that affect all equally do not give rise to a due process right to be heard. But, when a relatively small number of persons are affected on individual grounds, the right to a hearing is triggered. Falling into that latter category is the situation where, during the amendment process, a governmental unit singles out and specifically targets an individual's property for a zoning change after notice of a general plan of amendment has been published. *Id.*

■ When, during the executive Council meeting on September 13, 1989, councilman Rice moved to amend the planning commission's recommended zoning map so as to convert Nasierowski's parcel to an O–1 zone for obviously personal reasons, he offered no policy reasons in support of his proposal. Without stating a rationale, Rice simply moved to arbitrarily reclassify the parcel from C–3 to O–1, notwithstanding the planning commission's recommendation that the property be retained in a commercial zone.[7] Thus, the O–1 zoning reclassification did not reflect a good faith policy determination, but rather was the result of Rice's autocratic exercise of elective office for the achievement of a personal objective.

Second, the Council's action clearly resulted in a differentiable impact on a specifiable individual, thus triggering a right to a hearing. *Harris*, 904 F.2d at 502. Although the rezoned strip of land encompassed approximately fifteen separate parcels, the Rice amendment was patently calculated to inflict a disproportionately detrimental injury upon only *one* landowner: Nasierowski. Two Council members were cognizant of the differential impact that the amendment would have on Nasierowski, and dissented for that reason.

Again, the facts and reasoning are indistinguishable from the situation presented in *Harris v. County of Riverside:*

> The County's consideration of the vast area contemplated by the [new general zoning ordinance] certainly affected a large number of people and would not ordinarily give rise to constitutional due process requirements. Within the County's amendment process, however, the County specifically targeted Harris' property for a zoning change after notice had been published for the [new ordinance].... *[T]he record supports the conclusion that the County undeniably knew the use Harris was making of his property when it acted to change the zoning on his land. Under the facts of this case, the County's decision to alter its proposed [new ordinance] specifically to rezone Harris' land constituted a decision which was distinct from, rather than a part of, approval of the [new ordinance].* This decision, in contrast to approval of the [entire new ordinance], concerned a relatively small number of persons (Harris and the immediately adjacent landowner) rather than the entire population of the West Coachella Valley.

*Harris*, 904 F.2d at 502 (emphasis added).

■ Thus, in these circumstances Nasierowski had a right to notice and hearing prior to Council's vote on Rice's proposed amendment. The City's failure to afford Nasierowski an opportunity to be heard constituted a denial of procedural due pro-

---

7. Verbatim: "I move to amend the Main Motion for parcels south ... of Church's Lumber to O–1. They are designated as C–3."

cess.[8] The final issue seeking resolution in this appeal is whether the district court erred as a matter of law in concluding that Nasierowski had no protected property interest in the C–3 zoning classification. Nasierowski's property interest in the previous zoning classification, if any, depends not on the federal Constitution, but rather on "existing rules or on understandings that stem from an independent source, such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Matulin v. Village of Lodi*, 862 F.2d 609, 615 (6th Cir.1988).

The district court in the instant case, citing *City of Lansing v. Dawley*, 247 Mich. 394, 225 N.W. 500 (1929), decided that under Michigan law Nasierowski had no such right because he had not obtained a building permit and had not commenced construction of the development prior to the time at which it was rezoned. The district court's interpretation of state law is subject to de novo review in this court. *See Salve Regina College v. Russell*, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

In *City of Lansing*, the Michigan Supreme Court concluded that the property owner plaintiff had no vested property right in an existing land use regulation unless "before the enactment of [a new zoning ordinance] he had done *anything of a substantial character* towards the construction of the building." *Id.* (emphasis added). Similarly, in a more recent case, the Michigan appeals court noted that in order to acquire a vested interest in a zoning classification the landowner "would have to ... undertake[] acts ... *in reliance* on the zoning ... of such a nature that a rezoning ... would be to his *substantial* detriment." *Trever v. City of Sterling Heights*, 53 Mich.App. 144, 218 N.W.2d 810, 812 (1974) (citing *City of Lansing*) (emphasis original).

In the case at bar, Nasierowski actively pursued and completed a course of action

of an inarguably substantial character in an effort to construct a retail and warehouse development on the property. First, and perhaps foremost, he expressly conditioned the purchase of the property on his obtaining a favorable zoning opinion from the City. It is clear that Nasierowski would *not* have purchased the land unless the City had first advised him that, as of right, he was authorized to develop the parcel along the proposed lines. The acquisition of the land was, in and of itself, a *substantial* act undertaken exclusively upon the City's approval and affirmative encouragement of the proposal.

Second, Nasierowski expended considerable money and effort in drafting a site plan, submitting it to the City for preliminary approval, petitioning the City for a variance from the specific site plan requirements, and negotiating with the City's planners and engineers in an effort to resolve minor disputes over relatively insignificant matters. These substantial undertakings bear only a vague resemblance to the modest efforts of the landowner in *City of Lansing*, who in 1927 "went no farther than to order the plans and cause a survey to be made of the lot." 225 N.W. at 500. The expenditure of the plaintiff in *City of Lansing*, in contrast to Nasierowski's in the case at bar, was correctly deemed too modest to give rise to a vested property interest. Thus, Nasierowski had a property interest in the old zoning classification within which his development was permitted. That property interest was securely vested by Nasierowski's engagement in substantial acts taken in reliance, to his detriment, on representations from and affirmative actions by the City.

Accordingly, the district court's grant of summary judgment in favor of the city is hereby REVERSED. Based on the record as it currently exists, it is evident that Nasierowski should have been granted his motion for summary judgment insofar as he requested an injunction prohibiting enforcement of the new zoning ordinance as

---

8. Because it is a hallmark of procedural due process that "a biased decisionmaker is constitutionally unacceptable...." *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975), Rice's decision not to recuse himself

from consideration of matters affecting Nasierowski's parcel, in addition to Council's failure to provide Nasierowski with notice of its intentions, may have been improper.

against his property. The case is hereby remanded to the district court for further proceedings not inconsistent with this opinion, including consideration of questions not addressed by the district court in its opinion of March 5, 1990, including the individual defendants' entitlement to absolute immunity, and the propriety of an award of monetary damages in addition to the equitable relief mandated herein.

BOYCE F. MARTIN, Jr., Circuit Judge, concurring.

While I concur in the majority's final result, I have reservations regarding the breadth of the precedent suggested by today's opinion. Specifically, I am concerned by the holding that procedural due process claims are now deemed "instantly cognizable" in this circuit without requiring a "final decision" for ripeness purposes. This rule seems implicitly to refer to any and all procedural due process claims related to zoning and as such I find the rule troubling.

In zoning matters, where taking or substantive due process claims are alleged, the law clearly prescribes that finality requirements be satisfied before these claims can be entertained in federal court. See Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). The prerequisites for bringing a procedural due process claim, however, are unclear. Some courts have found that procedural due process claims in zoning matters are exempt from finality requirements. See Landmark Land Co. v. Buchanan, 874 F.2d 717, 723 (10th Cir. 1989) (procedural due process claim justiciable even if not ripe); Harris v. County of Riverside, 904 F.2d 497, 501 (9th Cir.1990) (finality requirements not apply under the specific facts of the case). See also Hammond v. Baldwin, 866 F.2d 172, 176 (6th Cir.1989) (citing Williamson, 473 U.S. at 194, 105 S.Ct. at 3120 ("if the [claimed] injury is the infirmity of the process, neither a final judgment nor exhaustion [of administrative remedies] is required")). The majority, relying heavily on these cases, promulgates a broad rule that procedural due process claims in zoning matters are not subject to ripeness requirements. I

note and agree with what other circuits have said in choosing to retain a final decision requirement for procedural due process claims in certain instances. See Hoehne v. County of San Benito, 870 F.2d 529, 532 (9th Cir.1989) (final decision requirement may apply to procedural due process claim when related to other constitutional claims); Herrington v. County of Sonoma, 857 F.2d 567, 569 n. 1 (9th Cir. 1988) (procedural due process claim as well as other constitutional claims subject to finality requirements), modifying 834 F.2d 1488 (1987), cert. denied, 489 U.S. 1090, 109 S.Ct. 1557 (1989); Unity Ventures v. Lake County, 841 F.2d 770, 775–76 (7th Cir.1988) (procedural due process claim subject to finality requirements); Kinzli v. City of Santa Cruz, 818 F.2d 1449, 1456 (9th Cir.) (procedural due process claim cannot be raised because linked to unripe substantive due process claim), as amended, 830 F.2d 968 (1987), cert. denied, 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 861 (1988); Norco Constr., Inc. v. King Cty., 801 F.2d 1143, 1145 (9th Cir.1986) (final decision requirement applicable to procedural due process claim).

The majority analogizes Nasierowski's facts to Harris, 904 F.2d at 497, using Harris as a model for today's ruling. Harris, however, does not hold that procedural due process claims are never subject to ripeness requirements, simply that such a determination will depend on the circumstances. Id. at 500. In Harris, the court emphasizes that, "Procedural due process claims arising from an alleged taking may be subject to the same ripeness requirements as the taking itself depending on the circumstances of the case." Under Harris, if a claim "challenges the rezoning decision in isolation, as a single decision with its own consequences, rather than as one in a series of county actions resulting in a taking," the procedural due process claims is exempt from ripeness requirements. Id. at 501. The court found that Harris had properly alleged a procedural due process claim that was distinct from other constitutional challenges subject to finality requirements. Because Harris was forced to pay a substantial amount of money to either regain

the use of his land or to prompt the county to make a final determination, the court found that this constituted "actual, concrete injuries, which are separate from any taking." *Id.* at 501. *See also Herrington,* 834 F.2d at 1495 (because the plaintiffs withdrew their taking claim, court found it was unclear if finality requirement would still apply to procedural due process claim).

Even though Mr. Nasierowski has failed to seek a variance from the Board of Zoning Appeals, I feel the majority has reached the right result here by not barring his procedural due process claim on ripeness grounds. Mr. Nasierowski's claim, analyzed in the manner suggested by *Harris,* appears limited to the process itself and his injury separate from any taking. Indeed, Nasierowski has *not* alleged a taking claim. I would caution, however, that we retain the finality requirements for procedural due process claims where we cannot find a single, concrete separate injury or where the procedural due process claim is in reality an adjunct to a taking or other constitutional claim. *See Herrington,* 857 F.2d at 569, n. 1; *Norco,* 801 F.2d at 1145; *Harris,* 904 F.2d at 500.