Laurie HOSTETLER, Plaintiff,

v.

CITY OF PERRYSBURG, et al., Defendants.

No. 3:97CV7275.

United States District Court, N.D. Ohio, Western Division.

March 12, 1998.

Gregorie Roether Elder, Barkan & Robon, Toledo, OH, for Laurie Hostetler.

Teresa L. Grigsby, Joan C. Szuberla, Theodore M. Rowen, B. Gary McBride, Spengler & Nathanson, Toledo, OH, Peter D. Gwyn, Gwyn & Aubry, Perrysburg, OH, for City of Perrysburg, Perrysburg City Counsel, Tim McCarthy.

Joan C. Szuberla, Theodore M. Rowen, B. Gary McBride, Spengler & Nathanson, Toledo, OH, Peter D. Gwyn, Perrysburg, OH, for Tim Conyngham.

## Order

CARR, District Judge.

In this civil rights case, brought under 42 U.S.C. § 1983, plaintiff claims she was denied the due process right to a fair tribunal in an appeal of a zoning board decision. This court has jurisdiction pursuant to 28 U.S.C. § 1331. Pending are defendants' motion for summary judgment (Doc. 29), and plaintiff's cross-motion for summary judgment. (Doc. 42). For the following reasons, defendants' motion shall be granted, and plaintiff's motion shall be denied.

## Background

Plaintiff resides at 277 East Front Street, Perrysburg, Ohio. This property is on the corner of Front Street and Linden Lane. St. Rose Catholic Church and School are on the other side of Linden Lane to the west of plaintiff's property. St. Rose is part of the Toledo Catholic Diocese. All St. Rose property is titled in the name of Bishop James R. Hoffman. St. Rose also owns three properties, which are located to the north of plaintiff's property at 89, 91 and 99 Linden Lane. The property of 99 Linden Lane abuts plaintiff's property. The properties are in the Historic District of the City of Perrysburg, as is plaintiff's home.

In 1995, the parish planned to ask for zoning changes to expand its campus. These plans included construction of a Parish Center to house a new gymnasium and other facilities. These plans were to be submitted to the Perrysburg Board of Zoning Appeals (BZA). Lacking public support for the proposed expansion, St. Rose decided not to submit the plans.

On November 5, 1995, Rev. John Thomas, Pastor of St. Rose, wrote a message in the parish newsletter, encouraging all parishioners to support Councilman Timothy McCarthy in the upcoming election because he was the only current City Councilman who supported the St. Rose expansion plans. McCarthy was subsequently re-elected to the City Council.

In early 1997, St. Rose submitted new plans for its expansion which included building a new gymnasium. To make space for additional parking for the church, school, and new gymnasium, this plan included tearing down 89 and 91 Linden Lane and moving 99 Linden Lane.

St. Rose's application for the zoning variances necessary for this plan were considered by the BZA at a meeting on January 15, 1997. At this meeting, Perrysburg Councilman Timothy Conyngham stated that City Council approval of a different St. Rose project, the construction of a cul-de-sac on Rice Street, was a "done deal." City Council, however, had not yet approved the Rice Street project. Also, when told that there was ample parking within walking distance from the church, Conyngham replied that he did not want to walk three blocks in the rain to go to church, Despite these remarks, the BZA turned down St. Rose's request for variances.

This decision was appealed to the City Council. Plaintiff requested that Councilmen McCarthy and Conyngham recuse themselves from the vote because of alleged bias in favor of St. Rose. The councilmen declined to do so. Council approved St. Rose's proposal by a 4–3 vote.

Plaintiff claims Councilmen McCarthy and Conyngham improperly failed to recuse themselves from the vote on St. Rose's proposed variances. Plaintiff has filed suit, claiming this failure to recuse violated her due process fight to a fair tribunal in the appeal of the BZA decision.

## Discussion

 "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955). This applies to administrative agencies that adjudicate as well as to courts. *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) (citing *Gibson v. Berryhill*, 411 U.S. 564, 579, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973)). A biased decisionmaker is constitutionally unacceptable. Such bias will be found where the adjudicator has a pecuniary interest in the outcome of a decision. *Id.*

 A tribunal may also be unfair if it acts in both investigative or adjudicative functions. *Id.* at 48. To prove an unconstitution-

al risk of bias from the combination of executive and adjudicative functions, plaintiff must "overcome a presumption of honesty and integrity in those serving as adjudicators." *Id.*

In *Hammond v. Baldwin,* 866 F.2d 172, 177 (6th Cir.1988), the Sixth Circuit defined the situations when a decision maker's bias would violate due process, stating:

> In summary, the cases in which a bias has been found to exist, in violation of due process, involve one of two characteristics: either the decisionmakers derived a direct, pecuniary interest from decisions adverse to claimants, or the decisionmaker was engaged in adjudicative and executive functions in violation of the principle of separation of powers (internal citation omitted).

The Sixth Circuit also addressed a conflict of interest in *Nasierowski Brothers Investment Co. v. City of Sterling Heights,* 949 F.2d 890 (6th Cir.1991). In *Nasierowski Bros.,* the court found that a landowner's right to due process was violated when a city zoning plan was amended without public notice or hearing. Sterling Heights councilman Rice lived near Nasierowski Bros.' property and proposed the zoning amendment that specifically affected the Nasierowski Bros.' right to develop the property commercially. The court held that the change in zoning without notice or an opportunity to be heard violated Nasierowski Bros.' due process rights. The court also stated that the amendment was proposed to achieve councilman Rice's personal objectives, and was not supported by policy reasons, and that Rice's decision not to recuse himself from consideration of matters affecting Nasierowski's property may have been improper. *Id.* at 896–97.

### A. Councilman McCarthy

In the case at bar, Perrysburg councilman McCarthy refused to recuse himself from the vote on St. Rose's applications for zoning changes. Plaintiff alleges that McCarthy's refusal to withdraw created an unfair tribunal because: 1) McCarthy and his family are members of St. Rose and his children either currently attend or have attended St. Rose School; 2) McCarthy donated $5,000 to St. Rose for expansion or improvement projects; and 3) McCarthy is a partner in the law firm

of Shumaker, Loop & Kendrick (Shumaker) which represents the Toledo Catholic Diocese and has represented St. Rose in the past. Plaintiff claims the combination of these factors made McCarthy biased as a matter of law, so that he could not lawfully vote on St. Rose's proposals without violating plaintiff's right to an unbiased tribunal.

### 1. Membership in St. Rose Parish

■ A public official or employee's membership in a church is not "in and of itself, ... of such a character as to manifest a substantial and improper influence on the public official or employee with respect to that person's duties." O.R.C. § 102.03(J). Therefore, the McCarthy family's membership in St. Rose Parish, did not, by itself, require McCarthys' recusal from a vote on a St. Rose proposal. Also, McCarthy's decision to send his children to school at St. Rose creates neither an intolerable bias in favor of St. Rose nor a pecuniary interest in the outcome of the zoning appeals vote.

### 2. McCarthy's Donation to St. Rose

McCarthy made a $5,000 pledge to the "Gift of Faith" campaign. He wanted his gift to be applied to the construction of the new gymnasium, and Father Thomas testified that his funds went for that purpose. McCarthy's pledge was, however, unrestricted.

■ It is undisputed that McCarthy made a valid inter vivos gift. Once a donor gives an unrestricted gift, he cannot demand repayment, even though the donee disregards his desires. In *Bolles v. Toledo Trust Co.,* 132 Ohio St. 21, 4 N.E.2d 917 (1936), the Ohio Supreme Court stated in paragraph one of the syllabus:

> The essentials of a valid gift inter vivos are (1) an intention on the part of the donor to transfer the title and right of possession of the particular property to the donee then and there and (2), in pursuance of such intention, a delivery by the donor to the donee of the subject-matter of the gift to the extent practicable or possible, considering its nature, with relinquishment of ownership, dominion, and control over it.

By relinquishing control and right of possession, the donor can no longer determine how the gift is to be used. Therefore, an unrestricted gift can be spent by the donee as it sees fit, regardless of the donor's desires and expectations. *Id.* at 27, 4 N.E.2d 917.

■ In light of these principles, McCarthy had no direct pecuniary interest in the gymnasium project. Having made an unconditional gift, he could make no claim for refund. Having no disqualifying pecuniary interest as a result of his gift to St. Rose, McCarthy was not required to recuse himself from voting on plaintiff's appeal to the Perrysburg City Council.

### 3. McCarthy's Position with Shumaker, Loop & Kendrick

■ McCarthy is a partner in the Shumaker law firm. As such, he is entitled to share in the profits of any firm business. Plaintiff attempts to establish a pecuniary interest between McCarthy and St. Rose through Shumaker's representation of the Toledo Catholic Diocese. St. Rose is but one of more than 130 parishes in the diocese. This makes any link between the two remote enough that McCarthy does not have a direct pecuniary interest in the St. Rose zoning appeals simply on the basis that his law firm represents the diocese.

Plaintiff further claims McCarthy has a pecuniary interest because his law firm represented St. Rose in the past. Shumaker has represented St. Rose, but not concerning this expansion project and zoning appeal. The law firm of Eastman & Smith represented St. Rose and performed the legal work for the zoning applications and appeals.

■ Plaintiff also claims McCarthy had a direct pecuniary interest in the St. Rose expansion project because Shumaker billed St. Rose $153 for phone calls concerning the acquisition of the properties on Linden Lane. This does not create a direct pecuniary interest in the outcome of the zoning appeals because: 1) the acquisition of the Linden Lane properties was not specifically related to the zoning appeal; and 2) Shumaker did not represent St. Rose in the acquisition of these properties.

The Linden Lane properties were acquired between 1993 and 1996. Once acquired, this property could be used for any purposes St. Rose chose. The purchase was not dependant on the successful application for a zoning variance to create a parking lot. Rather, the acquisitions were part of St. Rose's plan to acquire properties on Linden Lane to facilitate any future parish plans, be they for expansion or otherwise. Work for these acquisitions started in 1991, and St. Rose first acquired property on Linden Lane in 1991.[1] The zoning appeals were for this specific expansion project. If the appeals were denied, St. Rose would retain the Linden Lane properties and could use them for other parish purposes.

In any event, the phone calls to Shumaker were incidental to the acquisition of the Linden Lane properties. The calls were initiated by Eastman & Smith partner David Kuhl, who represented St. Rose in the matter. His affidavit states that he called Shumaker in their capacity as diocesan council about the acquisitions as a matter of professional courtesy. Shumaker neither performed nor controlled the legal work involved in acquiring the properties on Linden Lane. Kuhl simply provided progress updates as a matter of courtesy, and Shumaker billed St. Rose for the professional time spent receiving those reports.

### B. Councilman Timothy Conyngham

Plaintiff claims Councilman Conyngham is biased toward St. Rose and improperly refused to recuse himself from the vote on the St. Rose zoning appeals. This bias is allegedly created by the Conyngham family's membership in the St. Rose Parish, Conyngham's attendance at a BZA meeting where the St. Rose project was discussed and his actions there, and Conyngham's wife's employment at St. Rose.

### 1. Membership in St. Rose Parish

As discussed above, the Conyngham family's membership in the St. Rose Parish, by itself, does not create sufficient bias so as to

---

1. That property, 19 Linden Lane, was not part of the zoning appeal.

require Conyngham's recusal from the vote on the St. Rose zoning appeals.

### 2. Conyngham's Actions at the Board of Zoning Appeals Meeting

Conyngham attended the January 15, 1997, BZA meeting, where the St. Rose's applications for variances were considered. His statements at the BZA meeting that City Council approval of a different proposal was a "done deal" and that he didn't want to walk three blocks in the rain to get to church, while possibly neither prudent nor well-timed, do not create a pecuniary interest or constitute an executive or adjudicative act. Therefore, because Conyngham's acts at the BZA meeting do not meet either of the criteria for bias as explained in *Hammond, supra,* those actions do not require his recusal from the vote on St. Rose's appeal of the BZA decision.

### 3. Conyngham's Wife's Employment at St. Rose

Conyngham's wife is employed at St. Rose as a teacher's aid. The dicta in *Nasierowski, supra,* states that a councilman's zoning amendment was improper because it affected property close to his home, and therefore, affected his property values. While the Sixth Circuit did not have to reach the question of whether the councilman should have recused himself from a vote on the zoning amendment, the vote clearly affected the value of his property, and that interest was enough to elicit a warning from the court.

There is no evidence that any action by Conyngham had or would have had any impact on his wife's employment or salary. At most, plaintiff's complaint alleges an appearance of possible impropriety. But no actual impropriety has been shown, and speculation about a possible cause for concern does not constitute proof of actual bias. Therefore, Conyngham did not have to recuse himself.

### Conclusion

Because plaintiff has not shown that councilman McCarthy or Conyngham had a direct pecuniary interest in the outcome of the zoning appeals vote. Also, plaintiff failed to show that McCarthy or Conyngham acted in

both an executive and adjudicative function. Even if plaintiff had made this showing, there is insufficient evidence of bias to overcome the presumption of integrity in public officials.

Therefore, it is hereby

**ORDERED THAT**

1) Defendants' motion for summary judgment (Doc. 29), shall be, and hereby is, granted; and

2) Plaintiff's motion for summary judgment (Doc. 42), shall be, and hereby is, denied.

**So ordered.**