NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  06a0774n.06
Filed:  October 18, 2006

Case No. 05-1238, 05-1483

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JOHN MARK BROWN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| CITY OF ROYAL OAK, MICHIGAN, et al., | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| | ) | |

**BEFORE:  BATCHELDER, SUTTON, Circuit Judges; and FORESTER, District Judge.**[*]

**ALICE M. BATCHELDER, Circuit Judge.**  Plaintiff-Appellant, John Mark Brown ("Brown"), his mother, and his brother were the successor trustees of the Barclay Trust, which held the stock and liquor license of the Redcoat Tavern ("the Redcoat"), located in Royal Oak, Michigan. In 2002, the Trust submitted to the requisite authorities an application to transfer the stock and liquor license to Brown and his brother.  Several months later, the Trust withdrew the application and Brown filed this action against the City of Royal Oak, the Royal Oak Police Lieutenant Donald Foster, Assistant City Attorney James Marcinkowski, City Manager Lawrence Doyle, Police Chief

_____

[*]The Honorable Karl S. Forester, United States District Judge for Eastern District of Kentucky, sitting by designation.

Ted Quisenberry, and City Attorney Charles Semchena, ("Defendants").[1] The twelve-count complaint seeks declaratory and injunctive relief as well as compensatory and punitive damages, and includes claims under 42 U.S.C. § 1983 that the Defendants' actions with regard to the application for transfer of the stock and liquor license denied Brown due process, equal protection and the fundamental right to choose a career and receive stock, and that the Defendants had failed to prevent these violations of Brown's rights. The complaint also includes claims of conspiracy under 42 U.S.C. § 1985(3); negligent failure to prevent constitutional violations, actionable under 42 U.S.C. § 1986; malicious abuse of process; denial of due process, equal protection and First Amendment rights; claims under RICO, 18 U.S.C. § 1962; and state law claims for libel and slander and intentional infliction of emotional distress.

The district court denied Brown's motion for partial summary judgment and granted Defendants' motion for summary judgment on the RICO claim, dismissing it with prejudice. The court dismissed the remaining federal claims without prejudice as unripe; and, having dismissed all of the federal claims, dismissed the state law claims without prejudice. Brown appeals that order. The court denied Defendants' claims for attorneys' fees and Defendants appeal. As we explain below, we AFFIRM the dismissal of Brown's due process and equal protection claims without prejudice. We AFFIRM the dismissal of Brown's remaining federal claims, but remand with instructions that they be dismissed with prejudice. Finally, we AFFIRM the dismissal of the state law claims without prejudice and the denial of Defendants' motion for attorney fees and costs.

---

[1]The City of Royal Oak has asserted governmental immunity consistent with the Michigan Supreme Court's ruling in *Ross v. Consumers Power Co.*, 420 Mich. 567 (1984), and all other defendants have asserted qualified immunity. At the time of the complaint, Defendants were all government officials acting in their official capacities and assert immunity from personal civil liability in that their actions did not violate clearly established statutory or constitutional rights. *See Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). The district court, finding that it lacked jurisdiction over Plaintiff's claims, did not reach the governmental and qualified immunity defenses.

# I.  BACKGROUND

Michigan law requires the Michigan Liquor Control Commission ("MLCC") to approve any transfer of a liquor license or of more than 10% stock ownership in an establishment holding a liquor license.  M.C.L. § 436.1529(1).  The MLCC considers several factors in approving transfer applications, including the approval of the local legislative body in which the applicant's place of business is located, the opinions of local law enforcement, the applicant's past convictions for a felony or a crime involving violence, and any sentences imposed for specific offenses.  *See* M.C.L. § 436.1501.  Furthermore, the ordinances of the City of Royal Oak provide that "the transfer of ownership of existing [liquor] licenses . . . will be approved at the sole discretion of the City Commission," and that "transfer of ownership of existing licensed establishments shall be reviewed by the LLC Committee and approved or disapproved by the City Commission."  Royal Oak Ordinance 2001-06 §§ 2 and 6.

On October 18, 2002, the Barclay Trust submitted the Redcoat stock and liquor license transfer application to Royal Oak's Lieutenant Foster.  Lt. Foster then performed criminal background checks of Brown, his brother, and his mother, as part of the criminal investigation report required by the MLCC.  The background checks revealed that Brown had been placed on probation by the state court in Florida after he was involved in a hit and run accident in 1992; that he had violated that probation by traveling to Michigan in 1995 without first procuring the consent of his probation officer; and that there was an outstanding Florida warrant for his arrest for the probation violation.  Lt. Foster's report also indicated that Kaye Barclay met the police department's requirements, but concluded that Brown and his brother did not.  On December 27, 2002, Royal Oak Police arrested Plaintiff on the Florida arrest warrant.  On December 30, 2002, Lt. Foster emailed

3

the criminal investigation report to City Manager Doyle, and sent the report to the MLCC, Assistant City Attorney Marcinkowski, and Police Chief Quisenberry.

A scheduled January 2003 Subcommittee meeting regarding the Redcoat transfer application was adjourned to give Brown the opportunity to obtain cancellation of the Florida warrant. After a second adjournment in February 2003, the Barclay Trust asked to adjourn the next meeting, now rescheduled for March 6, 2003. The Subcommittee denied that request and advised the trustees to attend the meeting. The trustees did not appear at that meeting. Rather, on March 5, 2003, the Barclay Trust withdrew its liquor license and stock transfer application from the MLCC, and on March 7, 2003, from the City of Royal Oak. On March 14, Brown and his brother resigned as successor trustees of the Barclay Trust. Kaye Barclay subsequently filed an amended application for transfer of the stock and license, naming only herself as trustee. Brown filed this action on June 13, 2003, and on November 10, 2003, the City of Royal Oak approved a transfer of the Redcoat's stock and liquor license to his mother, Kaye Barclay.

Brown's complaint alleges that the Defendants engaged in a conspiracy of unlawful retaliation, harassment, and "predetermined-denial" of the Barclay Trust's transfer application. The district court granted the Defendant's motion for summary judgment, finding that Brown's federal and constitutional claims are not ripe for adjudication because the Trust, through Brown and the other two successor trustees, withdrew its application before the Commission issued a final ruling.

The district court had original jurisdiction pursuant to 28 U.S.C. § 1331, federal question jurisdiction, and supplemental jurisdiction under 28 U.S.C. § 1367. We have jurisdiction pursuant to 28 U.S. § 1291.

## II. FEDERAL CLAIMS

4

## A. RIPENESS

We review issues of justiciablity, such as ripeness, *de novo*. *NRA of Am. v. Magaw*, 132 F.3d 272, 278 (6th Cir.1997). "Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Bigelow v. Michigan Dept. of Natural Resources*, 970 F.2d 154, 157 (6th Cir. 1992) (quoting *Southern Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990)). "The ripeness inquiry arises most clearly when litigants seek to enjoin the enforcement of statutes, regulations, or policies that have not yet been enforced against them." *Ammex, Inc. v. Cox*, 351 F.3d 697, 706 (6th Cir. 2003).

As the Supreme Court has explained, the ripeness doctrine stems "both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18, 113 S.Ct. 2485 (1993). The purpose of the ripeness doctrine is

> to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49, 87 S.Ct. 1507 (1967).

In *Ammex, Inc.*, we reiterated the standards for ripeness:

> In determining whether a pre-enforcement challenge is ripe, three considerations must be weighed. The first two deal with the "fitness of the issues for judicial determination." One aspect of the "judicial fitness of the issues" is the extent to which the legal analysis would benefit from having a concrete factual context. The second aspect of the "judicial fitness of the issues" is the extent to which the enforcement authority's legal position is subject to change before enforcement. The third consideration deals with the "hardship to the parties of withholding court consideration."

*Ammex*, 351 F.3d at 706 (citing *Abbott Labs.* 387 U.S. at 148-49). Furthermore, we noted that *"*[w]here, as in this case, the statute at issue has not been enforced against [the plaintiff], and indeed where a notice of intent to enforce has been explicitly withdrawn, the ripeness doctrine provides the appropriate analysis for determining whether this case should be heard at this time." *Ammex*, 351 F.3d at 706.

**1. The Procedural Due Process Claim**

In the case before us here, after their request for a third continuance was denied by the Subcommittee, Brown and the other trustees of the Barclay Trust declined to pursue the Trust's transfer application to a final decision from the Royal Oak City Commission and instead withdrew the application before the Commission could act. Because of Brown's action, neither the MLLC nor the Royal Oak city Commission ever denied the Trust's transfer application or enforced any regulation against the Trust. Therefore, as was the case in *Ammex*, there was no formalized administrative decision.

Brown relies on *Nasierowski Brothers Investment Co. v. Sterling Hts.*, 949 F.2d 890 (6th Cir. 1991), in arguing that his procedural due process claim is instantly cognizable in federal court despite the Commission's having issued no "final decision" on the transfer application. We find that *Nasierowski* is inapposite.

*Nasierowski* involved a "pure" procedural due process claim arising from a zoning restriction and Nazierowski's request for an injunction prohibiting the city from enforcing an allegedly invalid zoning classification against his property. *Nasierowski*, 949 F.2d at 893. The district court held that a "taking" claim could not be adjudicated in federal court until the plaintiff had exhausted his administrative remedies and failed in his efforts to obtain a use variance from the appropriate

6

regulatory body. The district court held that because Nasierowski had failed to seek a variance from the Board of Zoning Appeals, his claims were not ripe for adjudication. *Id*. We reversed, because we concluded that Nasierowski had not alleged an unconstitutional "taking" of his property, but instead had asserted that he was deprived of procedural due process when he was not accorded a public hearing at which to challenge the zoning reclassification of his property. *Id*. We adhered to the view that "a procedural due process claim is instantly cognizable in federal court without requiring a final decision on a proposed development from the responsible municipal agency," *id*. at 894, explaining that

> [c]onceptually, in the case of a procedural due process claim, "the allegedly infirm process is an injury in itself," whereas, in the context of a takings claim, the alleged injury – a diminution in property value – cannot be assessed with any degree of certainty until the municipality arrives at a final decision as to how the property owner will be permitted to develop his property.

*Id*. (quoting *Hammond v. Baldwin*, 866 F.2d 172, 176 (6th Cir. 1989)). We went on to hold that "Nasierowski's injuries accrued and attached immediately when Council convened in executive session and materially deviated from the recommendations of the planning commission, thus subverting the purpose of the duly conducted notice and comment process." *Id*.

Brown argues that *Nasierowski* controls because he has not alleged a "taking" claim, but has asserted only that Defendants violated his due process, equal protection and First Amendment rights by "issuing groundless liquor license violations, engineering his arrest, and issuing a false [police] report regarding his criminal history, all to provide a basis for recommending disapproval of the liquor license transfer request." But Brown's claim is not comparable to Nasierowski's. Brown cannot claim that he was not afforded a public hearing to challenge the denial of the Trust's application to transfer the stock and liquor license. Brown was not denied the opportunity for a

7

public hearing, and the transfer application was never denied. Rather than attend the Subcommittee meeting at which the application was scheduled to be considered, the trustees – of which Brown was one – withdrew the application.

Brown has not alleged that the state or city requirements for transferring liquor licenses or stock in liquor license establishments are unconstitutional, or that the Royal Oak City Commission applied them arbitrarily in this case. Brown's argument seems to be that if the Subcommittee had considered the application, it would have relied on trumped up historical information and denied the application, and therefore, the district court erred in distinguishing *Nasierowski* and in ruling that Brown's claims were unripe for federal adjudication. *Nasierowski* recognized that when "the claimed injury is the *infirmity of the process*," the claim is "instantly cognizable." *Nasierowski* does not extend to claims which are no more than speculation that the process, if it were permitted to proceed, might be infirm. Brown's "if we had some ham we could have a ham sandwich if we had some bread" claim invites precisely the kind of premature adjudication that the ripeness doctrine exists to prevent.

2. **The Equal Protection Claim**

Brown claims that the Defendants' actions in regard to the application for transfer of the stock and liquor license of the Redcoat deprived him of his right to equal protection of the laws. In *Bigelow v. Mich. Dep't of Natural Res.*, 970 F.2d 154 (6th Cir. 1992), in which plaintiffs raised, among other things, related claims of due process violation, equal protection violation, and improper taking of property, we held that, like their taking claim, plaintiffs' equal protection claim was subject to ripeness review under *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). Brown has not demonstrated the requisite finality here because

8

he cannot show that his pursuit of further administration action would not be productive. *See Bigelow*, 970 F.2d 158-59. Accordingly, we conclude that the district court did not err in dismissing Brown's equal protection claims on ripeness grounds.

## B. The remaining federal claims

With the exception of the RICO claim,[2] the district court dismissed all of Brown's federal claims because it found that they were not ripe for adjudication. We agree, as we have already explained, that the procedural due process claim and the equal protection claim are not ripe. We will affirm the dismissal of the remaining claims, but on other grounds. *See Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 f.2d 214, 216 (6th Cir. 1985) ("A decision below must be affirmed if correct for any reason, including a reason not considered by the lower court.") We have combed the 1690 pages of this record, and we conclude that Defendants are entitled to summary judgment on each of Brown's remaining federal claims because Brown has failed to provide sufficient evidence to raise a genuine issue of material fact as to any of those claims.

We turn first to Count VI, Brown's substantive due process claim. Brown claims that the Defendants' actions have deprived him of his "property interest relative to his right to receive a bequest of Redcoat stock and a liberty interest relative to his right to pursue a career as manager of [the Redcoat,]" and that "Defendant's actions were arbitrary and capricious and there was no rational basis for the refusal to recommend approval of the stock transfer with Plaintiff as trustee." Brown does not specify which Defendant acted arbitrarily, but from the context we assume he refers to Lt. Foster, the officer who conducted the background investigation and recommended that Brown and his brother did not meet the requirements for transfer of the stock and license. Brown apparently

---

[2]The court dismissed the RICO claim on the merits and Brown does not appeal that aspect of the judgment.

9

complains that actions actually taken by the Defendants – as opposed to actions that he believed they would take had the application not been withdrawn – were arbitrary and without rational basis. The record before the district court on summary judgment does not contain evidence to raise a genuine issue of fact material to this claim. We note, for example, that it is undisputed that Brown is in fact a manager of the Redcoat. There is no evidence in this record to support a claim that the Defendants have prevented him from managing the tavern or from pursuing that career. Nor could a rational jury conclude, based on the evidence in this record, that the citations issued to the Redcoat for violations of the liquor laws over the years were issued in an attempt to provide a basis for some later action by the City with regard to a transfer of the Redcoat's stock or the liquor license, or that the investigations of the Redcoat or Brown – or his mother and brother, for that matter – were undertaken for abusive or illegitimate reasons. In short, the record contains no evidence of executive action that could "properly be characterized as arbitrary, or conscience shocking, in a constitutional sense," *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998), or of "conduct intended to injure in some way unjustifiable by any government interest [which] is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849.

Brown has not provided evidence from which a jury could conclude that the Defendants refused or failed to prevent any of the harms of which he complains, or that Brown suffered any cognizable injury as the result of an official policy or custom of the City pursuant to which the individual Defendants acted or failed to act, or that any of the Defendants had or exercised any supervisory authority over any other of the Defendants as alleged in Count II. Nor does the record contain any evidence sufficient to permit a finding, required in order to prevail on Count III, a claim under 42 U.S.C. § 1985(3), that any Defendant acted on the basis of racial or other class-based

10

animus with regard to Brown or that any two of the Defendants acted in concert such that they were engaged in a conspiracy. In the absence of the evidence necessary to establish the conspiracy required to prevail on a claim under § 1985(3), Brown cannot prevail on Count IV, a claim that the Defendants violated 42 U.S.C. § 1986, which provides a cause of action against persons who, with knowledge of the §1985 conspiracy and the power to prevent the conspirators' wrongful acts, fail to do so. Finally, the record contains no evidence from which a jury could find in Brown's favor on Count VIII, his claim that the Defendants' actions were in retaliation for the filing of – and prevailing in – a lawsuit against the City. Certainly this would qualify as protected activity for purposes of a claim of retaliation under the First Amendment, but the record clearly demonstrates that Brown was not a party to that lawsuit.

We affirm the district court's dismissal of these claims, but because Brown failed to provide sufficient evidence to raise a genuine issue of fact material to any of them, they must be dismissed with prejudice.

### III. ATTORNEYS' FEES

Defendants filed a Motion for Attorney Fees on December 29, 2004. On March 11, 2005, the district court denied the Defendants' motion, and Defendants now appeal. We review the denial of a Motion for Attorney Fees for abuse of discretion. *See Riddle v. Egensperger*, 266 F.3d 542, 547 (6th Cir. 1995).

Defendants argue that they are entitled to attorneys' fees and costs because Brown and his counsel were aware from the outset of the litigation that his claims were without legal or factual foundation. Defendants maintain that they are entitled to $206,677.00 in attorneys' fees pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1927. Section 1927 of Title 28 provides:

11

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The district court disagreed and was not persuaded that the of conduct Brown's counsel "unreasonably and vexatiously" multiplied the proceedings:

The fact that plaintiff pleaded in his complaint that the liquor license transfer application was withdrawn before the City Commission or MLLC ruled on the transfer application does not demonstrate that plaintiff's constitutional claims were frivolous, unreasonable, without foundation, or pursued in bad faith, as required to award reasonable attorney fees to a prevailing defendant under § 1988. While ultimately unsuccessful, plaintiff advanced non-frivolous arguments why the ripeness doctrine should not apply. *See Nasierowski Brothers v. Sterling Hts.*, 949 F.2d 890, 894 (6th Cir. 1991).

On appeal, Defendants contend that the court abused its discretion in denying their motion for fees. Noting that they had prevailed on the RICO claim below, entitling them to awards under § 1988, Defendants go on to argue that attorney fees should be awarded because the Plaintiff's action was frivolous, unreasonable, or without foundation. Defendants argue that under this standard for awarding attorney fees spelled out in *Christiansburg Garment v. EEOC*, 434 U.S. 412, 421 (1978), attorney fees should be awarded when the court finds that the claim was groundless at the outset "or that the plaintiff continued to litigate after it clearly became so." *Hughes v. Rowe*, 449 U.S. 5 (1980).

The district court recognized and considered the *Christiansburg Garment* framework for analyzing Defendants' motion and nevertheless held that Brown's claims did not rise to the level of "frivolous, unreasonable, or without foundation." The court considered Brown's argument from *Nasierowski* and found it sufficient to withstand a challenge under § 1988 and § 1927. The court reviewed the entire record and determined that fees were not warranted. Brown's constitutional

12

claims may have lacked real legal merit from the beginning, but his attempt to extend *Nasierowski* presented a non-frivolous legal argument and the district court was entitled to deny attorneys' fees after considering the merits of that argument. While we might have come to a different result, we find no abuse of discretion here.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court dismissing Brown's procedural due process and equal protection claims without prejudice because they are not ripe. We **AFFIRM** the dismissal of all of the remaining federal claims, but because we conclude that they are wholly unsupported by the evidence in the record, we remand those claims to the district court with instructions to dismiss them with prejudice. We **AFFIRM** the dismissal of the state law claims without prejudice on the grounds stated by the district court. Finally, we **AFFIRM** the denial of Defendants' motion for attorney fees and costs.

13